BOURNE *et al.*

*v.*

REPASS.

(*Supreme Court of Appeals of Virginia, Dec. 7, 1899.*)

[34 S. E. Rep. 623.]

#### Officer—Accounting—Application of Payments.

Where a county treasurer turned over tax tickets to his deputy for collection, and the latter made payments from time to time to the former, without the former's knowing the source from which the money was obtained, the former may apply the payments to the oldest outstanding receipts for tax tickets.

#### Appeals—Decrees—Presumption.

A decree is presumed correct, on appeal, until the contrary is clearly shown.

Appeal from circuit court, Wythe county.

Bill by W. H. Nye against J. W. Repass, J. A. Bourne, and others, for an accounting, in which defendant Bourne filed a cross bill against complainant and his co-defendants. From a judgment for Bourne, said co-defendants appeal. Affirmed.

*Robert Crocket* and *Blair & Blair*, for appellants.

*C. B. Thomas*, for appellee.

CARDWELL, J., delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Wythe county in favor of appellee, J. W. Repass, late treasurer of

Wythe county, against appellants, J. A. Bourne, J. F. C. Clark, J. A. Ward, E. R. Ward, A. B. Nye, G. A. Lambert, and J. N. Coley, as sureties for W. H. Nye, a deputy of Repass, for certain amounts ascertained to be due from Nye on account of tax tickets placed in his hands for collection, and unaccounted for.

Repass served three terms as treasurer of Wythe county. His first term began July 1, 1883, and ended June 30, 1887 ; his second began July 1, 1887, and ended June 30, 1891; and his third began July 1, 1891, and ended June 30, 1895.

Nye qualified as deputy for Repass on February 25, 1884, giving bond to Repass in the penalty of $10,000, with J. F. C. Clark, J. G. Clark, A. B. Nye, J. A. Ward, and J. A. Bourne as his sureties ; and on January 17, 1890, he again qualified, executing a second bond to Repass, in the penalty of $15,000, with the same sureties as in his first bond, except J. G. Clark, who had died.   Again, on January 1, 1892, he qualified as deputy to Repass, executing bond to him in the penalty of $20,000, with appellants as his sureties ; and on April 14, 1893, he executed a trust deed to C. B. Thomas, trustee, upon certain real estate in Wythe county, to secure Repass the payment of any and all amounts that might be found due from him (Nye) on account of tax tickets placed by Repass in his hands for collection for the years 1887 and 1888, and to secure to Repass any other amount that he (Nye), as his deputy, might be found to be owing to him.

Certain tax tickets were placed by Repass in the hands of Nye, as his deputy, for the years 1883, 1884, 1885, 1886, 1887, 1888, 1889, 1890, and 1891.

Among the tax tickets turned over by Repass to Nye for the year 1883 were some which Repass, as deputy for J. C. Allison, his predecessor in the office of treasurer of Wythe county, had on hand and uncollected when he became treasurer, amounting to over $600.   These are spoken of in the record as the "Allison tickets."

It further appears that in July, 1891, in order to expedite the collection of uncollected tax tickets, Repass appointed one J. B. Steffey a deputy, and Nye turned over to him, at Repass' request, certain tax tickets in his hands, amounting to about $3,000. About this time Nye became sick or disabled, and so remained for some time; and in February, 1894, his sureties being apprehensive that they might become losers, they proposed to Nye that in order that they might, as far as possible, save themselves harmless, J. N. Coley, one of Nye's sureties, be appointed as deputy to Repass, and that he (Nye) turn over to Coley all the uncollected tax tickets which he had received from Repass. To this Nye agreed, and Coley was appointed as such deputy, and Nye turned over to him the uncollected tax tickets in his hands, amounting to $8,846.04. But, in addition to that amount, Repass claimed that Nye still owed him a large sum on account of other tax tickets which he had received and had not accounted for. Thereupon Nye instituted this suit in equity in the circuit court of Wythe county against Repass and his (Nye's) sureties for a settlement of all matters between them. To the bill filed by Nye, the averments of which are numerous, Repass and Nye's sureties filed their answers; and afterwards Repass filed a cross bill against Nye and his sureties and J. B. Steffey, in which he sets out at length the dealings between himself and Nye, as well as with Steffey, also his deputy, the manner in which he kept an account with Nye as to the tax tickets turned over to him, and how he applied the payments which Nye had made to him on account of tax tickets placed in his hands, and claiming a large balance due to him from Nye and his sureties.

To the cross bill filed by Repass, Nye and his sureties made answer; and upon the pleadings, and the exhibits filed therewith, the circuit court referred the cause to one of its commissioners, with minute directions as to how he should state an account of the transactions between Repass, treasurer, and Nye, his deputy.

Nye and his sureties claimed that Repass had no right to

turn over to Nye the "Allison tickets," and charge him and
his sureties therewith in the account which he (Repass) kept
with Nye ; that Repass had credited Steffey with collections
made by him, and accounted for from tax tickets which Nye
had turned over to Steffey ; and, finally, that the accounts
between Nye and Repass had been so confused by the manner
in which Repass had kept them that no fair and just settlement
could be made, and that no balance could be ascertained to be
due from Nye, for which his sureties were responsible, which
would be other than conjectural or the result of guesswork.

The commissioner, W. L. Stanley, made an elaborate report
in response to the decree of reference, but said that it was
impossible to report the amount paid by Nye, Steffey, and
Coley on the tax tickets of the different years, owing to the
fact that Repass always credited the payments made to the
oldest outstanding receipt of Nye for the tax tickets turned
over to him, until the payments made thereon were sufficient to
take up the oldest receipt, whereby the receipts for the tax
tickets placed in Nye's hands for collection were taken up for
the years 1883, 1884, 1885, 1886, and 1887; leaving unpaid
and unaccounted for part of the tickets for 1888, and all for
the years 1889, 1890, and 1891.   Upon the coming in of this
report the judge of the circuit court required the commissioner
to make a supplemental statement, designated in the record as
"Statement A, Y, Z," in which Nye was charged with the tickets
turned over to him in each of the years he acted as deputy, and
credited with his delinquent lists of tax tickets returned, the
tickets delivered by him to Steffey and Coley, and so much of
the aggregate payments made to Repass as would balance the
account at the end of each year, when practicable; and in this
way the balances due to Repass from Nye and his sureties were
ascertained, the balance in some instances being made up of
tickets which Nye had permitted to become barred by the
statute of limitations.

The decree entered thereon, and appealed from, held that

Repass, as treasurer, had the right to keep, and did keep, a running account with Nye, his deputy, in which he applied the payments made from time to time to Nye's credit on his oldest outstanding receipt for tax tickets placed in his hands for collection, and that Repass did not know the source from which the money came with which such payments were made, and that Nye did not inform him as to the source from which the money came ; and, overruling all exceptions to the report of commissioner Stanley and to the supplemental statement, A, Y, Z, decreed against Nye and his sureties, on the several bonds given by him to Repass, for the amounts found to be due to him from them, respectively, but decreed against Nye individually for the amount due Repass on the "Allison tickets."

The amount decreed against Nye, however, on account of the "Allison tickets," having been released by Repass since the decree complained of was made, no further mention need be made of this matter.

The appeal in this case is taken by the sureties on the several bonds executed by Nye to Repass, and not by Nye.

There is no proof whatever in the record to sustain the contention of appellants that Repass misled them by his false statements into becoming Nye's sureties.

The principles relied on by appellee to sustain the decree appealed from were established by this court in Chapman v. Com., 25 Grat. 751, reaffirmed and approved in Crawn v. Com., 84 Va. 282, 4 S. E. 721, and are recognized and sustained by numerous decisions of other courts. They are founded upon the common-law rule with respect to the application of payments, and are applied to the accounts of public officers as well as to those of private individuals. The rule is that if a general account is kept, and the payments are made without any direction as to how they shall be applied, the moneys paid are treated as though they were the property of the debtor, and are applied to the satisfaction of the oldest debts. In this case the proof sustains the decree in holding

that Repass did not know, and that Nye did not inform him, as to the source from which the money came with which the payments were made.

It would be impracticable to discuss in detail in an opinion the numerous questions raised and discussed in the record. It is apparent that the judge of the circuit court gave the record a most careful consideration, and only entered the final decree after mature deliberation ; and the errors assigned have been examined and considered by us with all the care possible, and we are unable to say that any error has been committed by the circuit court.

As was said in Shipman v. Fletcher, 91 Va. 487, 22 S. E. 463 : ''The judgment of a court of competent jurisdiction is entitled to great weight. It is always presumed to be right until the contrary is shown. An appellate court will not overturn it unless satisfied that it is wrong. It devolves upon the party complaining to show error, and to satisfy the appellate court that the judgment or decree complained of is wrong.''

We are of opinion that the decree appealed from should be affirmed.

RIELY, J., absent.