JOSHUA FROWNFELTER, SAMUEL MYERS, and JOSEPH
HELWIG vs. THE STATE, use of the COUNTY COM-
MISSIONERS OF CARROLL COUNTY.

*Tax collector—Act of 1874, ch. 483, sec. 31— Variance—Act
of 1872, ch. 232—Treasurer for Carroll County—County
Commissioners of Carroll County—Defaulting Tax-col-
lector—Sureties on Collector's Bond—Taxation—Assess-
ment—Misapplication of Taxes—Breach of Tax-collector's
Bond—Estoppel.*

The Act of 1874, ch. 483, sec. 31, requires the collector of taxes to
account for and pay " at such time as the law shall direct; " a bond
given by a collector provided for payment " at such times as the
County Commissioners shall, by law direct." HELD:

That the variance was immaterial.

The Act of 1872, ch. 232, which provides for the appointment of a
Treasurer for Carroll County, and makes it his duty to receive the
proceeds of all taxes levied in the county, cannot operate so as to
impair or diminish the powers of the County Commissioners over
the property owned by the county, and payment of taxes to the
treasurer by the collector thereof, is a compliance with the provi-
sion of his bond, requiring the taxes to be paid to the County
Commissioners or their order. Payment to the Treasurer is in law
payment to the County Commissioners.

In an action on the bond of a tax-collector, the sureties thereon can-
not rightly set up, as a defence to the action, the facts, that at the
time of the reappointment of the collector, he was a defaulter for
taxes levied in previous years, and that the County Commissioners,
who appointed him, did not furnish this information to the sure-
ties.

County Commissioners in appointing as a tax-collector, a person who
was at the time a defaulter, do not become responsible to the sure-
ties on his official bond.

A tax-collector will not be discharged from responsibility to account
for and pay over the money received by him from tax-payers, be-

Frownfelter, *et al. vs.* State, use of County Comm'rs of Carroll County.

cause of the failure of the Clerk of the County Commissioners to keep, as required bylaw, " an accurate account of the assessment, or rate of taxes assessed upon taxable property of the county, and how such assessment is disposed of, in a book to be kept for the purpose alone." and because the money for educational purposes was not levied separately from the other items of taxation.

Where a collector receives taxes for a particular year, and instead of having them applied to the credit of the taxes for that year with which he is chargeable, directs their application to the discharge of his defalcations for previous years, such application is a breach of his official bond.

The sureties on a tax-collector's bond, are estopped from denying that their principal was collector, or that he was answerable as collector.

APPEAL from the Circuit Court for Carroll County.

The case is sufficiently stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, RITCHIE, and BRYAN, J.

*William P. Maulsby*, for the appellants.

*D. N. Henning*, and *James A. C. Bond*, for the appellee.

BRYAN, J., delivered the opinion of the Court.

This action was brought by the State on a bond executed by Daniel Myers and the appellants. At the trial in the Circuit Court evidence was offered on the part of the plaintiff to show that Myers had been collector of the county taxes in the third election district of Carroll County, from May or June, 1872, continuously, up to the eleventh day of May, 1881; and that he was on that day appointed by the county commissioners to collect the State and county taxes for that year; and that when he

was appointed he was allowed a salary of two hundred dollars a year; and that on the twenty-sixth of June, the rate of taxation was fixed by the county commissioners; and that afterwards the clerk of the county commissioners, who was also the county treasurer, delivered to Myers a book which contained a list of the tax-payers of said district, No. 3, with a statement of their assessable property; which book was made up by the said clerk by computations, or calculations of his own, from data contained in a book labeled on the back: "Assessment book, 1876—district, No. 3;" that the clerk took from Myers a receipt dated June 7th, 1881, which stated that he had received of the county commissioners of Carroll County, a copy of the property in the third election district of said county assessable for county purposes, amounting to the sum of one million twenty-seven thousand one hundred and ninety-eight dollars, on which amount a tax of fifty cents (975 remitted) on each hundred dollars valuation was levied by said commissioners for county and school purposes, amounting to the sum of five thousand one hundred and forty dollars and eighty-seven cents, &c., &c. Evidence was also offered tending to show that the date of the receipt was by mistake written "June," instead of "July," and it was also shown that on the fourteenth of November, 1883, Myers had confessed a judgment on the bond in suit for the sum of two thousand four hundred and forty-eight dollars and twenty-eight cents.

Judgment had been confessed by all the obligors of the bond; but subsequently it was stricken out as against the sureties, who are now the appellants, and the cause proceeded to trial against them. They set up a number of defences to the action. We find in the record two demurrers in their behalf, and a large number of pleas and prayers for the instruction of the jury. It is maintained that the bond is void because it does not pursue the form required by the statute. It recites that Myers had been

Frownfelter, *et al. vs.* State, use of County Comm'rs of Carroll County.

duly appointed by the county commissioners for Carroll County, collector of the county taxes for the year eighteen hundred and eighty-one, imposed or to be imposed by the said county commissioners for Carroll County, on the assessable property in the third election district of said county. And the condition is in these words: "if the above bounden Daniel Myers, appointed collector as aforesaid, shall well and faithfully execute the office of collector of the county taxes for Carroll County as aforesaid, and the several duties required of him by law, and shall well and truly account for and pay to the county commissioners for Carroll County, or their order, the several sums of money which he shall receive or be answerable for by law, at such times as the county commissioners shall by law direct, then the above obligation to be void, otherwise to be and remain in full force and virtue in law." The form of the condition substantially agrees with the requirements of the statute (1874, chapter 483, section 31.) The principal variance which has been suggested is that the statute requires the collector to account for and pay at such time as the law shall direct, whereas the bond in suit provides for payment at such times as the county commissioners shall by law direct.

The statute was made for a great public purpose which ought not to be defeated by minute and unsubstantial objections. It is also said that as the Act of 1872, chapter 232, provides for the election of a treasurer for Carroll County, and makes it his duty to receive the proceeds of all taxes levied in the county, the collector could not lawfully comply with the condition of this bond. The Act is local and applicable only to Carroll County. The treasurer is required to be clerk to the county commissioners, and it is made his duty " to receive and pay over according to the directions of law, or the order of the county commissioners the proceeds of all taxes levied in said county." Previously to the passage of this Act the county commis-

sioners were invested by statute with the "charge of, and control over, the property owned by the county;" and since the passage of this Act, the Legislature, by the Act of 1874, chapter 411, amended and re-enacted the statute, and preserved to them their powers in this respect. It is clear that the Act of 1872 for the appointment of a treasurer cannot operate so as to impair or diminish them. He is the receiver and custodian of the money arising from taxes for the lawful purposes of the commissioners.

The Act of 1874, chapter 483, section 31, prescribed the same condition for a collector's bond as was required before the Act was passed for the appointment of a county treasurer. We are therefore required to hold, in view of this legislation, that payment to the treasurer is in law payment to the county commissioners. Another ground for the avoidance of the bond is the alleged fraud of the commissioners in obtaining it. It appears that at the time Myers was appointed collector for the year 1881, he was a defaulter in considerable sums for taxes levied in 1880, and in previous years. And it is argued that it was the duty of the commissioners to inform the sureties of these defaults before the bond was executed, and that their failure to do so was a fraud which vacated it. The question is not whether the bond would be rendered null and void by deception, or by misrepresentation of the facts on the part of the county commissioners. The twenty-fourth plea explicitly sets forth that the county commissioners fraudulently concealed the defalcation of Myers from the defendants, and that they were thereby induced to execute the bond. By overruling the demurrer to this plea, the Court below decided that it set forth a good defence to the action. It is further maintained that an active duty rested on the commissioners to give this information to the sureties; and cases have been cited in which it was held that the sureties were entitled to receive from the obligee a full and frank disclosure of such matters.

This case must not be compared to a contract between private individuals, where one person is in the employment of another, and sustains towards him a confidential relation, by virtue of which sureties might infer that he was regarded by his employer as a person of integrity. Nor should it be likened to a case where the bond binds the sureties to a responsiblity for defaults which have already occurred. The commissioners are public officers, who are authorized to appoint another public officer, and are required to take from him a bond for the faithful performance of his duty in the future. The sureties know the extent of the obligations which they incur by executing the bond ; and they must determine for themselves how far they are willing to trust to the integrity of their principal. The commissioners are bound by their public duty to appoint to office persons of capacity and honesty ; for a delinquency in this particular they are not, however, responsible to the sureties on the official bond. The rights, duties and obligations of all parties in this transaction are settled by the law, and upon that they must stand or fall. It is not made a requisite to the validity of the bond that the commissioners should give any information to the sureties ; and it would be an unreasonable construction to interpolate such a clause in the statute.

Before considering the other defences set up in discharge of the bond, it is necessary to consider the statute under which the taxes were levied. By the forty-first section the clerk of the county commissioners is required to keep " an accurate account of the assessment or rate of taxes assessed upon the taxable property of the county, and how such assessment is disposed of, in a book to be kept for the purpose alone," and within ten days after such assessment, he is required to deliver to the collector a fair copy thereof, or a copy of so much thereof as it shall be his duty to collect. By the forty-second section it is made the duty of the collector to proceed to collect taxes

within thirty days after receiving this copy, and to pay the county taxes to the county commissioners or their order, within six months; and it is also directed by the same section that all moneys levied for educational purposes shall be levied separately and distinctly from the other items of taxation, and a list thereof furnished to the school commissioners of the county. By the eightieth section it is enacted, that if any collector shall fail to account for and pay over the money he has collected, or ought to have collected within the time required by law, his bond may be put in suit, and he shall be chargeable with interest from the time the money ought to have been paid. The evidence shows that the book containing a statement of the assessment which was delivered to the collector, was made up by calculations and computations from data contained in another book, and was not a copy from some other statement previously made and entered in a book kept for that purpose alone. It also shows that the money for educational purposes was not levied separately from the other items of taxation. When we consider the vital importance of the power of taxation, and its indispensable relation to all the operations of government, we cannot infer that the Legislature intended to make the levy of the tax void, and discharge the collector from responsibility for the money received by him from tax-payers, because these matters of detail were not observed. Their omission in no way concerned the collector, or affected his rights. Evidence was offered on the part of the defendants tending to show that Myers had collected on account of the county taxes for 1881, the sum of five thousand and sixty-four dollars and eighty-six cents, and had paid it over to the county treasurer, and had directed it to be applied to the credit of the taxes for the year 1881, chargeable to him. There was evidence on the part of the plaintiff tending to show that a portion only of this sum was directed by Myers to be applied to

this credit, being the amount shown by eight separate receipts given him by the treasurer, when the payments were made; and that the residue of this sum was applied by his direction to his defalcations for previous years. If the commissioners or the treasurer knew that the money applied to the taxes due for previous years had been collected on the levy of 1881, certainly they would have had no right to permit such application. But in the absence of any knowledge of the sources from which it was obtained, it is difficult to see how they could have prevented Myers from applying it to his indebtedness for any year which he might name. When the money was in his possession there was nothing to identify it, or to distinguish it from other funds under his control or rightfully belonging to him. The obligation assumed by his sureties was that he should pay the money in discharge of the tax levied, within the time required by law. If he paid it in discharge of previous taxes, it was as much a breach of his bond, as if he had retained it in his own pocket. We think the law on this point is correctly stated in *Inhabitants vs. Bell*, 5 *Metcalf*, 499, and in *Gwynne vs. Burnell*, 7 *Clark and Finnelly*, 572. Without enumerating the numerous rulings of the Circuit Court on the questions which we have been discussing, it is sufficient to say that they are in accordance with the views which we have expressed.

. There are, however, other questions in the record. It is maintained that there is a variance between the bond described in the declaration, and the one set out on oyer. There is a different collocation of phrases in the two instances; but the legal meaning and effect of the contract is the same. The twenty-fifth plea is bad on demurrer, inasmuch as it is a special plea which in effect amounts to *non est factum*. Some of the pleas which were overruled are distinguishable from those which were sustained by scarcely perceptible shades of difference. We think

that the defences sought to be made by them, were clearly and distinctly made by the pleas which were held to be good. Some of the pleas held bad on demurrer violate settled rules of proceeding. For instance the first plea alleges general performance; whereas, the breach being set out in the declaration, it ought to have traversed or confessed and avoided it. Others seek to make defences from which the defendants were estopped. After the defendants signed this bond, they could not deny that Myers was "collector" or that he was "answerable as collector," or that there were county commissioners of Carroll county. *Billingsley, et al. vs. State,* 14 *Md.,* 369. The first exception was taken to the ruling by the Court that a notice to produce certain receipts was sufficient. If parol evidence had been offered and admitted, of the contents of these receipts, we would have been required to review the action of the Court; but the record shows that they were produced by one of the counsel for the defendants, and they were offered in evidence. We do not suppose that it is contended that they were not admissible. In the sixth exception the Court allowed the plaintiff to ask his witness a question which was leading in its form. Leading questions are in general objectionable and ought not to be permitted; but sometimes they may be properly used for the purpose of bringing the mind of the witness to the point about which it is desired to interrogate him. There are, of course, other occasions when they ought to be allowed. We think that it may safely be left to the discretion of the Court conducting the trial to decide when they should be asked.

We have not found it necessary to take up the very numerous rulings in this case one by one; but we have given them all deliberate consideration, and find no error which works an injury to the appellants. The rule laid down in the plaintiff's sixth prayer for the computation of interest is less favorable to the plaintiff than it ought to

have been. Interest ought to be calculated on the principal sum due, and the payments ought first to be applied to the extinguishment of the interest then due, and what remains ought to be applied to the reduction of the principal. This mode of calculating the amount of the indebtedness would produce a greater sum than the rule stated in the sixth prayer.

*Judgment affirmed.*

(Decided 15th July, 1886.)