# Richmond.

## CRAWN v. THE COMMONWEALTH.

### JANUARY 12th, 1888.

OFFICIAL BONDS—*Successive Terms—Surety—Failure to Settle—Case at Bar.*— S. was county treasurer for three terms, beginning in 1875, 1779 and 1883. He resigned in 1885, owing the State a balance for taxes collected in that year. In 1878 there was a balance due which remained due from year to year, the collections for each year being used to pay the balance for the preceding year. C. was surety on his official bond.

HELD:

     1. C. is liable for the balance due at the end of the treasurer's term.

     2. The failure to require the treasurer to make prompt settlements did not discharge C.

Error to judgment of circuit court of city of Richmond, rendered June 30th, 1886, in the case of the Commonwealth of Virginia against Samuel R. Sterling, late treasurer of Rockingham county, and one Crawn and others, sureties on his official bond. The judgment of the court below being against the defendants, they applied for and obtained an appeal from this court. Opinion states the case.

*John E. Roller*, for the plaintiff in error.

*Attorney-General R. A. Ayers* and *W. R. Meredith*, for the defendant in error.

LACY J., delivered the opinion of the court.

At the trial the plaintiff proved that there was a balance due the State of Virginia from the treasurer of the county of Rockingham, Samuel R. Sterling, upon the revenue and license tax of 1885, the sum of $19,750 98. The defendant thereupon offered to prove on his part that S. R. Sterling was treasurer of Rockingham county for three successive terms—the first beginning July 1st, 1875, and continuing four years; the second beginning July 1, 1879, and continuing four years; the third beginning July 1, 1883, and continuing to the — day of December, 1885, when he resigned his office; and that a bond was given at the commencement of each term, and a new bond executed on the motion of one of his sureties during his second term of office. That the first and second bond was for $150,000. The new bond given during the second term was for $150,000, and at the commencement of the third term a bond was given for $140,000. That the sureties on these several bonds were in some instances different persons. That the said Sterling was a defaulter to the State of Virginia during his first term. That such default occurred in 1878, and amounted to at least $35,000. That this default continued up to December, 1885, when said Sterling resigned his office as treasurer. That the collections made by said treasurer of revenues and taxes of each year succeeding the year 1878, were taken by him to make good the deficiency previously existing. That the successive auditors of the State failed to comply with the provisions of section 31, ch. 60, Acts 1878–9, and the same section of act of general assembly of March, 1875. That the supervisors of Rockingham county also failed to make settlements with said treasurer as required by law, or to require him to make exhibits of his accounts as treasurer with the county, and of the moneys, books, and papers in his hands belonging to said county. That said Sterling was a defaulter to said county in 1878 in not less than $20,000, and continued such defaulter up to the time of his resignation. That if either the auditors or board of super-

visors had discharged their duties as required by law, in regard to the accounts of said treasurer, the defaults aforesaid would have been discovered and made known. That said defaults were not known to the sureties upon the bond of 1879, and the bond of 1883, and that said sureties would not have gone on said bonds if they had had any intimation that any default had previously occurred. That one of the sureties died in December, 1883, and another died in August, 1880. That the estates of each, for the most part, had been paid out to creditors and distributees widely scattered in various States, and some of them insolvent, before the institution of this suit, in complete ignorance of any liability on the bonds of Sterling, treasurer, as aforesaid. But the court refused to permit the introduction of said testimony, or any part thereof, whereupon the defendant excepted, and judgment being rendered for the said plaintiff, as aforesaid, the defendant brought this case here by writ of error, and the said action of the said circuit court of Richmond city, in excluding the said evidence so offered by the said defendant, is assigned as error here.

Did the evidence offered by the defendant constitute any valid defence to the action? The application of the payments made by Sterling above stated, was made by the creditor by the direction of the principal debtor. In a similar case upon this point decided by this court in 1875, (the case of *Chapman* v. *Com.*, reported in 25 Gratt., 721), Moncure, P., delivering the unanimous opinion of the court, so far as this point is involved, said : "Scott owed two debts to the commonwealth, for which different sets of sureties were liable. He made payments to the auditor on account of these different debts at different times, which payments were applied by the auditor according to the direction of the debtor. This was perfectly proper if the auditor acted fairly, and it is not pretended that he did not; certainly there is no evidence in the record tending to prove that he did not. If he had known that money applied by Scott to the payment of a debt for which his sure-

ties as collector was not liable, was derived from the collection of revenue collected by him under the bond in which they were sureties, they might have had just ground of complaint. But he had no such knowledge, and the money had no earmark. The law is well settled that a man owing two debts to the same creditor, and making a payment to the creditor, may apply it to either of the debts as he pleases. If the debtor fail to make the application, the creditor may make it as he pleases, and if both fail to make it, the law will make it according to the circumstances of the case; and in the absence of any other controlling circumstances, the payment will be applied first to the older debt. In this case the application was made by the concurrent act both of the principal debtor, who made the payment, and the creditor. The payments made by Scott on account of the revenue of 1870, were at least without any direction of Scott to the contrary (and there was none), properly applicable to the payment of what he had collected in the order in which it was collected, on the principle before stated; thus leaving due that portion of the revenue for which the sureties of the collector were clearly liable."

This case seems to be decisive of the case at bar on the question of the appropriation of payments, and we do not consider that the citations by the learned counsel from De Colyer on Guaranty, and his citation of cases, affect this question. There was no connivance of fraud on the part of the auditor suggested in either instance. The application of payments as made by them seems to have been in accordance with the settled law upon the subject.

Upon the suggestion that time was given by the several auditors, and that suit was not brought, as the law required, upon the failure of the debtor to pay promptly, it is not charged that there was any fraudulent concealment on the part of the auditors of the true facts in each case; and it is admitted that diligent inquiry on the part of the defendants would have

disclosed to them the true condition of affairs at any time; so that the defence in this regard amounts to the claim that there was indulgence on the part of the State—an extension of time to the debtor. In the case of *Smith* v. *Com.*, reported in 25 Gratt., 780, (which was a case where the surety of a treasurer who had defaulted to the State claimed to be discharged of his obligation by the act of assembly which extended the time of payment by the debtor, and thus enabled him, as was alleged, to default by postponing the time of discovery of his delinquencies) the court said: "In the case of *Com.* v. *Holmes*, 25 Gratt., 771, this court held, upon abundant authority, that the regulations prescribed by law for the settlement of such accounts at stated periods, being intended for the benefit of the government, to secure punctuality and promptness in its officers, were directory merely, and did not enter into and form part of the sureties' contract, so as to prevent the legislature from altering or extending the times of settlement at pleasure without the sureties' assent; and therefore, and from the nature of the officer's obligation and duties, and of the condition of the bond, such an extension did not operate as a discharge of the surety. We reaffirm that principle, and are of opinion that the sureties in this case are not discharged from liability for the official acts of their principal by reason of the extension of time for settlement granted to him," etc.

In the case of *U. S.* v. *Kirkpatrick*, 9 Wheat., 720, Mr. Justice Story, delivering the opinion of the supreme court of the United States, said these regulations as to settlements "are provisions of law created by the government for its own security and protection and to regulate the conduct of its own officers. They are merely directory to such officers, and constitute no part of the contract of the surety." These provisions are merely directory to the officers, and intended for the security and protection of the government, by insuring punctuality and responsibility, but they form no part of the con-

tract with the surety.   *U. S.* v. *Van Zandt*, 11 Wheat., 184; *U. S.* v. *Nicholl*, 12 Wheat., 509;  *U. S.* v. *Boyd*, 15 Pet., 187–208; *State* v. *Carleton*, 1 Gill., 249.

It is said that a surety is a favored debtor.   His rights are especially and zealously guarded, both at law and in equity, and the slightest fraud by the creditor annuls it.   His contract, exactly as he makes it, is the measure of his liability, and cannot be varied without his consent.   With these privileges, however, are associated certain duties.   He must take care of himself, and obtain all the information essential to his interest which lies within his reach.   It is no part of the duty of the creditor to furnish him such information.   If he neglects his interest and a loss occurs, he must bear it, unless he shows that it was in consequence of the creditor's fraud.   (Murfree Off. Bonds, § 704.)   And it is said by the same author that "the failure of the public officers of the United States to assert the right of the government against a defaulting principal in an official bond will not operate to discharge his sureties.   Their laches, it has been repeatedly said, cannot affect the government; and even if the delay be long continued, so that the sureties lose the benefit of remedies which would have been available if the government had acted promptly, it is, so far as they are concerned, *dammum absque injuria.*   A lapse of five years after the cause of action accrued will not create any presumption of payment or in any degree operate in favor of the sureties."   Section 769, *Id.*   See *Doe* v. *Postmaster-General*, 1 Pet., 318–327; 4 Myer's Fed. Dec., §§ 770, 771;  *U. S.* v. *Kirkpatrick*, *U. S.* v. *Van Zandt, supra.*

In this case, if the auditor received money paid him by the treasurer, applied it, as directed, to the debt due the State, in accordance with well-settled principles of law, in what degree could that act create any valid defence for the defendants?   If the books of the auditor always showed the true state of the treasurer's account, and the sureties, confiding in the integrity

or the responsibility of their principal, agreed to be bound for him without an inspection of his accounts, and without inquiry or examination, when by a simple act of precaution they might have learned the whole truth, and been saved from loss, if the loss occurs, who should bear it? Upon no just principle can it be placed otherwise than upon those who agreed to bear it. We think, therefore, that the evidence offered in this case constituted no valid defence to the action, and that the circuit court of Richmond city did not err in rejecting it; and the judgment appealed from here must be affirmed.

JUDGMENT AFFIRMED.