## THE AMERICAN BONDING AND TRUST COMPANY OF BALTIMORE CITY *vs.* MILWAUKEE HARVESTER COMPANY.

*Parties to Action on Bond of Indemnity—Liability of a Surety Company for Application by Employee of Money Collected to a Different Indebtedness.*

When in the bond by which a surety company agrees to indemnify an employer against loss arising from the defalcation of an employee, the latter unites for the purpose of assenting to the terms of the bond and of covenanting to indemnify the surety company, such a bond is not a joint obligation, and an action on it lies against the surety company alone without the joinder of the employee.

Defendant, a surety company, executed to plaintiff a bond by which it agreed to make good such pecuniary loss as plaintiff might sustain during a certain period by reason of any fraudulent or dishonest act of plaintiff's agent, in connection with his duties, amounting to embezzlement or larceny. The agent paid over to plaintiff all the money collected during the period covered by the bond, but he directed a part of the same to be credited on other accounts owing to the plaintiff, without knowledge by the plaintiff that the money collected by the agent from certain accounts was so applied to the payment of other accounts for which the agent was also liable. *Held*, that this action amounted to a fraudulent conversion by the agent of the money collected, and that the defendant is liable therefor under the bond.

Appeal from a judgment of the Superior Court of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*John L. G. Lee* (with whom was *E. J. D. Cross* on the brief), for the appellant.

If all the money collected by the agent was paid over to the said Milwaukee Harvester Company during the life of the bond, then the plaintiff had no loss under the bond.

If the agent paid over to the plaintiff all of the money

collected by him during the term of the bond, then, though the agent turned it over as other moneys, to be credited on other older accounts, that did not *constitute the crime of larceny or embezzlement*, and, therefore, the replication of the plaintiff which admits that the sum of $2,814.85 collected was paid over to the Milwaukee Harvester Company, but denies that it was paid over on account of said items collected, and therefore denies that there was no pecuniary loss to the plaintiff during the term of the bond. If the agent paid over to his principal the said sum of money collected on the items mentioned in said plea, but paid them over, misnaming them in order to cover up a previous embezzlement, then this is not a crime of embezzlement according to the terms of the bond.

It is a well-settled principle that a bond is only liable for the term thereof; that if there are two bonds, one bond must bear all loss during its term, and another bond the loss during its term, and if there are two terms of service, and a bond for one term, and there is an embezzlement before the bond is executed, then there is no loss under the bond. There are a great many cases in the books where principals have required of their agents fiduciary bonds and they had found out, or knew, or were charged with the knowledge that the agent was a defaulter, and they wished to protect themselves and save themselves harmless from loss which had already occurred at the time of the execution of a new bond. *Hecox et al.* v. *Co.*, 2 Fed. R. 535; *Patterson* v. *Freehold*, 38 N. J. Law, 255; *McGee* v. *Manhattan Life*, 92 U. S. 93. Courts will favor sureties in the application of payments. *Bond* v. *Armstrong*, 88 Ind. 65. It will be generally admitted that moneys arising due and collected subsequent to the execution of a second bond cannot be applied to the discharge of the first bond without manifest injury to the surety on the first bond. *U. S.* v. *January*, 7 Cranch, 572. Liability of sureties as to past defaults and defaults within a particular time. "A surety is not liable for the past defaults of his principal, unless

made so by the express terms of his contract." 24 *Amer. and Eng. Ency. of Law*, 751. See *State* v. *Banks*, 77 Md. 136; *State* v. *Wayman*, 2 G. & J. 254; *Hewitt* v. *State*, 6 H. & J. 95.

It was Brumbaugh's duty, when he collected money on account of his sales, to deposit such collections in the bank. That is, he was a bailee of such money until it went into the bank, and if, before depositing such collections in the bank, he had converted a part of them to his own use, he would have committed embezzlement, and not larceny, as his master, the Milwaukee Harvester Company, before such deposit in bank had neither actual nor constructive possession.   But the plaintiff admits that all the money received by collection of the above items was put in the bank, therefore there could be no embezzlement, as by depositing the money in the bank, which was its ultimate destination, Brumbaugh's bailment or possession was terminated and the company's possession begun.   Now, therefore, if he could have drawn out the money from the bank, after deposit, his offense would have been larceny, but as this was impossible, as the money was only subject to the company's order, he never committed larceny.   In order that embezzlement could have been committed, the money would have to have been converted after collection, but before deposit in bank, *i. e.*, termination of Brumbaugh's possession ; but all deposits of collections are admitted, as I have said before.   Now, larceny could only be committed after deposit ; but, as we have shown, this was also impossible, therefore neither embezzlement or larceny have been committed, and the bond is not liable.

*Edgar H. Gans* and *W. Calvin Chesnut* (with whom were *Hodson & Hodson* and *B. H. Haman* on the brief), for the appellee.

It will be remembered that embezzlement consists of three elements : (*a*) an agency; (*b*) a receipt of money as such agent; (*c*) a fraudulent conversion thereof.   Here all

elements confessedly exist except the conversion.   The existence of this the appellant denies and his denial leads him necessarily to the proposition, that wherever money is collected by an agent and ultimately is returned by the agent to his principal, then, it matters not in what capacity the money is so returned, embezzlement has not been committed.   Thus, for example, if an agent owes his principal $10 and collects from a debtor of his principal $10 and pays that to his principal in satisfaction of his own debt to him, this is not embezzlement.

The error of this proposition is apparent equally from reason and from authority.   In the illustration just given, the conversion consists in the misapplication of the money collected to satisfy the wrong debt.   There is no difference in principle and reason between the agent applying the $10 to pay a debt owed by him to a third party, and his taking the $10 to pay a debt owed by him to the principal.   In each case the latter loses the same amount.   In each case the money is fraudulently misapplied or converted.   In both cases the agent derives the personal benefit from the misapplication by discharging a debt of his own.   *Rex* v., *Hall*, 3 Stark, 67; also reported in 1 *Russ. & Ryan*, 463; *State* v. *Baumhager*, 28 Minn. 232; *Frownfelter* v. *State*, 66 Md. 87; *Gwynne* v. *Burnell*, 7 Clark & Fin. 572; *Com.* v. *Knebble*, 182 Pa. St. 176; *State* v. *Sooy*, 39 N. J. L. 529; *County of Pine* v. *Willard*, 39 Minn. 128; *State* v. *Smith*, 26 Mo. 226.

BOYD, J., delivered the opinion of the Court.

The appellee sued the appellant on a surety bond for losses sustained by the former through Upton S. Brumbaugh in connection with the duties of his position as its general agent.   There are two counts in the declaration, but they are similar, excepting as to the dates, the appellant having renewed for a year a bond which it had given for the previous year to " make good and reimburse to " the appellee to the extent of two thousand dollars, such

pecuniary loss as it may sustain " by reason of any fraudulent or dishonest acts of the employed in connection with the duties of said position, amounting to embezzlement or larceny."

1. The first question presented for our consideration is the ruling of the Court below on a demurrer to the declaration, which was overruled. The only ground urged for a reversal, for that reason, is that the appellant was sued alone on a joint obligation executed by it and Brumbaugh, who is a citizen of this State. It is, of course, necessary to unite all joint obligors in a suit on a bond in which they are only jointly liable, unless the failure to do so is properly accounted for, and when such omission appears on the face of the declaration it can be taken advantage of by demurrer. But an examination of the bond set out in the declaration fails to disclose any joint obligation of the bonding company and Brumbaugh. It is true both executed the original bond, although the renewal sued on in the second count was only executed by the company and not by Brumbaugh, but the covenants with the appellee were made by the bonding company alone. The bond provides that the appellant shall be called " the company,'' Brumbaugh " the employed," and the harvester company " the employer," and, after making some recitals and stating the consideration, it proceeds " it is hereby covenanted and agreed that the company shall  *  *  *  make good and reimburse to the employer," etc. Some of the conditions of the bond show that the obligation was on the part of " the company " and Brumbaugh evidently united in it to give his consent to the terms and to indemnify the bonding company. The concluding paragraph is: "And these presents witness, that the employed hereby agrees for himself, his heirs, executors and administrators, to indemnify the company against any loss or damage it may sustain in consequence of this bond; and forthwith after the company shall have paid the employer  *  *  *  any money, under or by reason of such bond, to reimburse the com-

pany the amount so paid," etc.   It was therefore not a joint obligation and there was no error in this ruling.

2. That on the demurrer to the defendant's second and seventh pleas we do not understand to be questioned in this Court, and therefore the next point to be considered is the alleged error in not sustaining the demurrer to the plaintiff's replication to the defendant's third plea.   That plea alleges that all the moneys collected by Brumbaugh, during the term of the bond and the renewal thereof, were paid over to the plaintiff and hence there was no pecuniary loss to it during the term of the bond sued upon.   It sets out a list of accounts showing the names of parties from whom they were collected, the dates and amounts of collections, being in the aggregate $2,814.85, and alleges that each and every item of them was paid over.   The plaintiff by the replication " denies that the sums of money included in the claim of $2,814.85 as itemized in said plea, were paid over to the Milwaukee Harvester Co., on the accounts for which it is alleged in said plea they were collected, and hence denies the statement in said plea that there was no pecuniary loss to the plaintiff during the term of said bond, and plaintiff further alleges that there was an actual deficit of $2,814.85 in the accounts of said Brumbaugh during the term of said bond."

It was said at the argument that the Court below, being of the opinion that it was not raised by this demurrer, did not pass on the question which the appellant intended to present, and only determined that the replication was a proper traverse of the facts alleged in the plea.   We might perhaps with propriety rest our decision on that ground, but as the question was fully argued and we cannot pass on the prayers which did raise it, because they were not brought before us by a bill of exceptions, although they are in the record, we will, without confining ourselves to the precise language used in the plea and replication, consider the point which was argued under this branch of the case, as far as we feel at all justified in doing.   Although we cannot for

the reason already given pass on it, we will use the fifth
prayer offered by the defendant as illustrating the position
contended for by it. It asked the Court to instruct the
jury that if they believed that the agent Brumbaugh paid
to the plaintiff all the money he collected, including the
sum sued for, during the term of the bond and the renewal
thereof, then they must find for the defendant, even though
they further believe that he directed the company to apply
his said payments to accounts other than those from which
they were actually collected. The theory of the appellant
is that if all the money was paid, then, 1st, the plaintiff
sustained no loss as contemplated by the bond, and, 2nd,
that Brumbaugh's acts did not constitute the crime of em-
bezzlement. This plea did not allege in terms that the acts
of Brumbaugh did not amount to embezzlement but that
defense was made by another plea, on which issue was
joined. The declaration, however, does specifically charge
that Brumbaugh did fraudulently and dishonestly appro-
priate the sum of $2,814.85 of the money of the plaintiff
in such a way as to amount to that crime, and this plea
undertook to meet the allegations in the *narr.* by simply
alleging that all the money collected during the term of
the bond had been paid over, which was replied to by the
plaintiff by the allegations that they were not paid on ac-
count of the items set out in the plea. The discussion of
this point must therefore be narrowed to the inquiry whether
the fact that the money collected by the agent was paid to
the plaintiff, although on accounts other than those so col-
lected, relieved the agent of embezzlement and the defend-
ant of liability, and, giving the plea the greatest possible
latitude, we are not called upon to discuss the many tech-
nical defenses that may be interposed on the charge of
embezzlement. It is a statutory crime and we have a num-
ber of provisions in our Code in reference to it. The
necessary elements to bring Brumbaugh's acts within the
statute are, 1st, agency; 2nd, receipt of money for, in the
name of or on account of his principal, as such agent, and,

3rd, a fraudulent conversion thereof. The agency and receipt of the money are conceded and it is contended that the third element is lacking, but the evidence produced at the trial, not being before us, we have nothing to do with the legal sufficiency of it to sustain the charge, but can only determine whether the payment as above stated is an answer to it and relieves the defendant.

Independent of authority we cannot understand how the position of the appellant can be successfully maintained. If Brumbaugh had fraudulently converted this money to his own use by paying it to some creditor other than the plaintiff, there could be no question as to the responsibility of the bonding company, and upon what principle can it be relieved merely because he so used it in payment of other debts he owed the plaintiff? If the bonding company had given the appellee one bond to be in effect from December 1st, 1895, to December 1st, 1896, and another from the latter date to December 1st, 1897, and Brumbaugh had collected from A and B $1,000 during the first year, which he appropriated to his own use, and during the second year collected from C and D a thousand dollars which he paid to the Harvester Company to be credited on the accounts of the first year, and that company did so credit A and B without any knowledge that the sums were collected from C and D, and there was still a deficit of a thousand dollars at the end of the second year, a suit on the first bond would have been met by the defense that Brumbaugh's obligations were cancelled by the payment so made, and the books of the appellee would have tended to sustain that defense. Then if suit was brought on the second bond, according to the appellant's theory it could defeat that action because the money received by the agent during that year had in fact been paid over to the plaintiff. Bonds of this character would be worse than useless if such results could follow, as the party undertaking to be indemnified by them might be misled and subjected to loss by relying on what he believed to be security, but which would prove to be a snare

and delusion.   Or take another instance, suppose the agent collected one hundred dollars from each of four parties and paid to his principal two hundred dollars to be credited on the accounts of A and B but kept the balance, and the bonding company was sued for the amounts he received from C and D, could it be possible that it would be a defense to say that the money paid on account of A and B was actually received from C and D, and that having been paid to the principal he could not recover, or if the agent was indicted for embezzlement of the money received from C and D would it avail him to prove that that particular money was paid over to the principal, although it was paid on account of what the agent had received from A and B ? If that be true, then if a bank officer appropriates one hundred dollars to himself one week and replaces that with another hundred dollars, so appropriated, the next week, and continues that operation from time to time until he finally owes the last hundred dollars, which he does not pay, he could not be convicted of embezzlement, or a bonding company could not be held liable on a bond of this character for the last hundred dollars, because the agent had paid that money over to his principal, although he had appropriated the last sum to pay what he previously owed.   If Brumbaugh had been the agent of the Harvester Company for Maryland and Virginia, and the appellant had been his surety for collections in Maryland alone, and another company for those in Virginia, and he had collected $2,800.00 in Maryland which he converted to his own use, and afterwards collected $2,800.00 in Virginia, which he paid to his principal to be credited on account of the Maryland collections, would the appellant admit that it was still liable because the money paid was in reality collected from the Virginia debtors ? Or could the other company be excused because that money (even if he paid the identical notes received by him) was actually received by the principal, although without knowledge of the source it came from, and was credited by the direction of the agent to the Maryland

claims ?   Other illustrations might be given to show not only how useless securities of this character would be, but the results that might follow, if such a doctrine as is contended for be adopted.   It might as well be said that if A owes B five dollars and he surreptitiously takes that amount out of the safe of B and then pays B the debt with it, that it would not be larceny, for he could with equal propriety say he had not appropriated it to his own use but had taken it simply to pay B, although he was thereby cancelling a debt he owed him.   As the point is now presented to us, the agent used his principal's money received during the term and under the conditions of the bond and applied it to his own use—that is, to the payment of debts he owed the principal, on account of collections previously made by him for which he was liable, and it was therefore as much a conversion of the principal's money as if he had paid it to some third party.   He could not successfully defend himself from the charge of embezzlement by reason of such payment, nor can his security do so under the terms of this bond.   There is no allegation that the Harvester Company was in anywise responsible for, or knew of, the use of money, which the appellant was liable for under the bond, by Brumbaugh to pay other debts he owed it.   If it had been accepted with such knowledge, another question would have arisen.

If then we were without authorities on the subject we would have no difficulty in reaching the conclusion that the defense intended to be relied on under this plea is not well taken, but those reflecting on the question are not wanting. In *Frownfelter* v. *State, use County Commissioners*, 66 Md. 80, the suit was on a tax collector's bond.   The collector had applied part of the money which he had collected, for the year for which the bond was liable, to his defalcations for previous years and the sureties contended that that could not be done and they still be liable.   This Court said on page 87 : " If the commissioners or the treasurer knew that the money applied to the taxes due for previous years

had been collected on the levy of 1881, certainly they would have had no right to permit such application. But in the absence of any knowledge of the sources from which it was obtained, it is difficult to see how they could have prevented Myers from applying it to his indebtedness for any year which he might name. When the money was in his possession there was nothing to identify it or to distinguish it from other funds under his control, or rightfully belonging to him. The obligation assumed by his sureties was that he should pay the money in discharge of the tax levied, within the time required by law. If he paid it in discharge of previous taxes, it was as much a breach of his bond as if he had retained it in his own pocket. We think the law on this point is correctly stated in *Inhabitants* v. *Bell*, 9 Metcalf, 499, and in *Gwynne* v. *Burnell*, 7 Clark and Finnelly, 572." In the case last cited there were several opinions filed to the same effect, but BARON GURNEY thus tersely stated his conclusions : " The application of any part of the money collected under the assessments of that year, to cover any deficiency in any former year, is just as much a breach of his duty and a forfeiture of his bond as if he had paid the money to any other creditors or lost it at the gaming table." To the same effect are *State* v. *Sooy*, 39 N. J. L. 539; *Com.* v. *Knettle*, 182 Pa. 176; *County of Pine* v. *Williard*, 39 Minn. 125; *Crawn* v. *Com.* 84 Va. 282; *Rogers* v. *State*, 99 Ind. 218; *Stone* v. *Seymour*, 15 Wend. 19; *Hecox* v. *Citizens' Ins. Co.*, 2 Fed. Rep. 535 ; *State* v. *Smith*, 26 Mo. 226. Those cases in nowise conflict with the general principles applicable to sureties, such as that they are only liable for defaults, etc., during the time the bonds are in force, but they hold that default is made by the application of money collected under the terms of the bond to the payment of other debts, even if such debts are due the obligee of the bond, provided, of course, he is not a party to its misappropriations and has no knowledge of it.

That the agent will be guilty of embezzlement by the

misappropriation of funds under these circumstances, if the evidence shows sufficient fraudulent conduct on his part as to amount to that crime, was expressly decided in *Rex* v. *Hall*, Russ. and Ryan, 463. There a clerk who had received eighteen pounds in one-pound notes for his employer charged himself with twelve of them and the same day received other money and paid over that sum and the other six pounds to his employer on account of another debt due by him to the master. He was held to be guilty of embezzlement. See also *State* v. *Baumhager*, 28 Minn. 226; 2 *Bishop New Crim. Law*, section 377, (ed. of 1892); *Roscoe's Criminal Evidence*, (456.)

So if we give this replication the construction placed upon it by the appellant, it was an answer to the plea and the demurrer was properly overruled. No other questions having been urged before us, the judgment will be affirmed.

*Judgment affirmed, appellant to pay the costs.*

(Decided November 16th, 1900.)