[No. 25602. Department One. November 29, 1935.]

PACIFIC COUNTY, *on the Relation of G. W. Hamilton, as Attorney General, Respondent,* v. CONTINENTAL CASUALTY COMPANY, *Appellant,* DANIEL M. NUPP *et al., Defendants.*[1]

[1]Reported in 51 P. (2d) 1078.

*Roberts & Skeel,* for appellant.

*The Attorney General, George G. Hannan, Assistant, Edward W. Mathewson,* and *John I. O'Phelan,* for respondent.

TOLMAN, J.—This is an action upon the official bond of a county treasurer, which was tried to the court, sitting without a jury. Findings of fact were made favorable to the plaintiff, and a judgment was entered against the defendant Continental Casualty Company for its proportionate share of the shortage found to exist. The defendant against whom the judgment runs has appealed.

For some eight years prior to January, 1931, the defendant Nupp had been chief deputy and cashier in the office of the county treasurer of Pacific county. In November, 1930, Nupp was elected county treasurer for the ensuing term, and on January 10, 1931, he took office as such. At that time, the books of his predecessor showed a balance of cash on hand and in bank of $106,-743.65. In addition to the book showing, which is not questioned, Mr. Pederson, the outgoing treasurer, testified to an accounting and the counting of the cash and cash items, in which he personally participated, which convinced and satisfied him that the full amount shown by the books was then turned over to Nupp as his successor. The findings made by the trial court are to that effect.

Later, on February 27, 1933, shortages were discovered in the treasurer's cash, which were finally found to amount to the sum used by the trial court in fixing the amount to be recovered from the appellant.

The sum and substance of the first two questions presented is to the effect that the trial court erroneously assumed that Nupp actually received from his predecessor the cash balance then shown by the

treasurer's books; and that, as appellant became a surety for Nupp at the time he assumed the office, the so-called erroneous assumption is the only basis for holding that the later failure to account established the liability of the surety.

There are several answers to this contention. (1) Unless there be evidence of some sort impeaching the books of the outgoing treasurer, those books are sufficient evidence to establish the fact. We find no evidence and nothing more than a suspicion to impeach the books. (2) The testimony of the former treasurer, Pederson, supports the record of his office, and that testimony alone would be sufficient to make a *prima facie* case. (3) Even if it be assumed that Nupp, while a deputy under the former treasurer, had misappropriated county funds, still the method which he later followed while he was county treasurer was the equivalent of the method disclosed and discussed in the case of *White & Bollard v. Standard Accident Ins. Co.*, 175 Wash. 174, 27 P. (2d) 123; and the taking of the last money received to cover prior shortages (if that was done) would be a breach of duty covered by the bond. This subject was thoroughly discussed and considered in the case just cited, and this court deliberately adopted the rule defined in the following brief quotation:

"But the fact that a shortage accruing within the term covered by the bond was superimposed upon a ground work of prior shortages does not attach to the later shortage the legal status of the earlier."

In June, 1932, the appellant attempted to procure its release as surety under the provisions of our statute, Rem. Rev. Stat., § 9942 [P. C. § 520] *et seq*. It appears that a proper notice was personally served upon treasurer Nupp, but no such notice was ever filed with the county clerk as required by § 9943 [P. C. § 521]. Instead of following the statute and filing a

notice with the county clerk, an attempt was made to serve and file the notice with the board of county commissioners by registered mail. The several county commissioners, called as witnesses, denied any knowledge of such a notice, and no such notice could be found in the records or files of the board.

We disregard everything done or attempted for the purpose of perfecting a filing with the board of county commissioners. Such a filing would be of no avail. The statute expressly provides the course to be pursued, and only by, at least, a substantial compliance with the statute can a surety obtain a release.

Rem. Rev. Stat., § 9934 [P. C. § 512], provides that the official bonds of all county and township officers (except that of the county clerk), shall be filed with the county clerk. The requirement of § 9943 [P. C. § 521], that the withdrawal notice be filed with the county clerk is therefore based upon reason; it shows a logical purpose and must be followed.

Upon the theory that the shortage occurred before the effective date of its bond, the appellant argues that it was prejudiced by the release by the county of the sureties upon the official bond of treasurer Pederson, who preceded Nupp as treasurer. Since we have already determined that the facts found by the trial court, supported by the testimony, negative any such prior shortage, a further discussion is unnecessary.

The defendant Nupp was called as a witness by the appellant, and, after he had testified to the nature of his duties while a deputy under his predecessor, he was asked to state whether or not, at the time he took over the office, a substantial shortage existed. Various objections were interposed; a considerable discussion followed, during which the court suggested that the witness might be asked if he had misappropriated any of the county funds while a deputy, and

also that the witness might be interrogated as to the truth or falsity of the treasurer's books at the time of the transfer of the office.

Counsel for respondent suggested that the witness be advised of his constitutional right to refuse to incriminate himself, and finally the witness was withdrawn without having answered the question. He was later recalled and asked to answer the original question as modified by the suggestions of the trial judge. The whole result was that Nupp testified that he made the entries in his predecessor's cash book, that the cash balance shown on the books included the money in the till and the money in the bank, but outside of that his memory seemed to fail.

Perhaps, if the case had been tried to a jury, this situation would demand careful consideration; but since the trial judge had presided in a cause where Nupp was convicted of falsifying public records, we are by no means convinced that anything which might have been elicited from Nupp under any circumstances would have been sufficient to impeach the treasurer's record, to overcome the testimony of the former treasurer, or to lead the trial court to make findings other or different from those which are now before us.

Finding no error, the judgment is affirmed.

MITCHELL, STEINERT, GERAGHTY, and BEALS, JJ., concur.