City of Hartford *v.* Franey.

————◆◆◆————

THE CITY OF HARTFORD *vs.* JOHN FRANEY AND OTHERS.

*F* was elected collector of taxes for the city of Hartford in April, 1874, for a term of two years, and in April, 1876, for another like term. By the city charter the collector was to give bond with sureties for the faithful discharge of his duties, such bond to be approved by the mayor. In June, 1876, *F* gave such a bond in the penal sum of $25,000, which was approved by the mayor. This bond counted on his original election in 1874 and his re election in 1876, and provided for his faithful discharge of the duties of his office and for his paying over to the city treasurer all moneys at any time in his hands as collector, during his tenure of the office. In March, 1877, upon request of the city, he gave another bond in the same terms, and for the same penal sum, signed by one of the sureties on the first bond and by two others, which bond was approved by the mayor. He resigned his office in July, 1877, being a defaulter upon his account with the city to the amount of $12,000. At the time of his re-election in April, 1876, he had received more money than he had then paid over to the city treasurer, having failed to comply with a provision of the city charter which required the collector to pay over monthly all

City of Hartford *v.* Francy.

moneys collected by him. During his tenure of the office he collected taxes upon the lists of 1873, 1874 and 1875, each payable in the following year. The statutory provisions with regard to the mode of making assessment lists, rate bills and tax warrants had not been complied with, but the taxes collected by him had been paid without compulsory process. The city brought suits at the same time upon both the bonds, setting out the same breaches. Held—

1. That both suits would lie.
2. That it made no difference that there were no legal assessments or tax warrants, the money having been paid to *F* as taxes and he being bound to pay over to the city whatever money he received.
3. That the sureties were liable for moneys in his hands from former collections at the time of his re-election in 1876, and which had not been since paid over.
4. That it would be presumed, in the absence of proof to the contrary, that moneys previously collected and which had not then been paid over, were at that time in his hands.
5. That his previous neglect to pay over monthly to the city treasurer all moneys in his hands, was a violation of duty, but not a misapplication of the money and did not constitute a defalcation.
6. That the sureties were liable for interest on the money so in his hands from the date of the approval of the bond until payment, and on all moneys afterwards received which were retained by him after it was his duty to pay them over.

A tax-payer with whom *F* had an account for groceries of about the same amount with his taxes, gave him a receipt in full for his bill, and *F* in return gave him a receipted bill for his taxes. Held that the taxes were not paid and the sureties not liable for the amount.

Another tax-payer gave a memorandum check for his taxes, and *F* made an entry on his book that the tax was paid. The check was never paid, and the tax payer had never had funds in the bank on which it was drawn sufficient to meet it and had since gone into bankruptcy. Held not to be a payment of the tax and that the sureties were not liable for the amount.

Two ACTIONS of debt on bonds given by John Francy and sundry sureties for the faithful discharge by him of the duties of collector of taxes for the city of Hartford; brought to the Superior Court in Hartford County. The cases were referred together to a committee and a single finding of facts made for both; and upon the facts both were reserved for the advice of this court. The points of law decided will be sufficiently understood without a full statement of the facts, which would occupy much space.

*C. R. Chapman* and *C. J. Cole*, for the plaintiff.

*H. C. Robinson* and *R. Welles*, with whom were *A. P. Hyde* and *G. G. Sill*, for the defendants.

GRANGER, J.   The defendant Franey was legally elected collector of taxes for the city of Hartford for the term of two years from April 6th, 1874, and on April 5th, 1876, was re-elected for a term of like duration.  He accepted, and continued in the exercise of the duties of that office from the date of his first election until July 12th, 1877, when he resigned.   During his tenure of office he received a part of the tax laid by the city upon the assessment list of 1873 payable in 1874, a part of the tax laid upon the list of 1874 payable in 1875, and a part of the tax laid upon the list of 1875 payable in 1876; he continued to receive payments upon each tax, during each year after it became payable, up to the date of his resignation.

The charter of the city of Hartford provides that the collector of its taxes shall give a bond with sureties "for the faithful discharge of the duties of his office,   *   *   * which bond shall be executed to the satisfaction of the mayor of said city."  The first bond which Franey gave was approved upon June 16th, 1876, was signed and sealed by himself, and the defendants H. P. Keane and William Toohy, as well as by M. C. Needham, now deceased, and was upon the condition following:—

"The condition of this bond is such that, whereas the said John Franey has heretofore, to wit, on the sixth day of April, 1874, been elected collector of said city of Hartford for the term of two years, and until his successor shall be appointed, was re-elected in April, 1876, and may also, from time to time hereafter, be re-elected to said office:—Now, therefore, if the said John Franey shall faithfully perform all his official duties due to the said city of Hartford by virtue of his said election, and shall save the said city from all loss, cost or damage by reason of his misfeasance in said office, and shall render a true account of all his money-dealings for, in behalf of, and with said city, and shall make just and true payment to the city treasury of all moneys in his hands at any time as an officer or agent of said city, for and during the entire period for which he shall remain in his said office by said election, re-election, or holding over, then this bond shall be

void, otherwise to be and remain in full force and effect. In witness whereof we have hereunto set our hands and seals this 15th day of June, A. D. 1876."

Upon March 26th, 1877, an additional bond was approved, which was signed by himself, H. P. Keane, C. & Wm. J. Steen and James Ahern, and was upon the condition following:—

"The condition of this bond is such that, whereas the said John Franey has heretofore, to wit, on the 5th day of April, 1876, been appointed collector of said city of Hartford for the term of two years, and until his successor shall be appointed, and may also, from time to time hereafter, be re-elected to said office:—Now, therefore, if the said John Franey shall faithfully perform all his official duties due to the said city of Hartford by virtue of his said appointment, and shall save the said city from all loss, cost or damage by reason of his misfeasance in said office, and shall render a true account of all his money dealings for, in behalf of, and with said city, and shall make just and true payment to the city treasury of all moneys in his hands at any time as an officer or agent of said city, for and during the entire period for which he shall remain in his said office by appointment or holding over or re-election, then this bond shall be void, otherwise to be and remain in full force and effect. In witness whereof we have hereunto set our hands and seals this 26th day of March, A. D. 1877."

On September 19th, 1877, the city of Hartford instituted a suit upon each bond; both writs were duly returned to and entered upon the docket of the Superior Court, and there remain; both suits were referred to the same committee for findings of facts; and in each that committee has reported that the collections made by Franey exceeded his payments by about the sum of $12,000. The advice of this court is asked as to the judgment which shall be rendered.

The defendant sureties insist that the existence of each suit is fatal to the other.

We cannot assent to this; it is not certain that both are for the same matter, cause and thing. Each bond is an independent undertaking; the second is by way of additional

security. When the suits were instituted it was not known that the entire penalty of the first would equal the collector's default; possibly, if not presumably, judgments upon both would be required for the full indemnification of the plaintiff. Again, under a possible limitation of the obligation imposed by each bond, such an application of payments might have been made by the collector as to bring his default between their respective dates, and there might have been a judgment for the plaintiff upon the first and for the defendants upon the second, neither judgment affecting the other suit.

Nor can we assent to the claim that the sureties are discharged from all obligation by reason of the finding that on the day on which Franey entered upon his second term, as well as upon the respective days of approval of his bonds, he had not paid to the treasurer an amount equal to collections previously made. For, as the finding is not to the contrary, it is to be presumed that he so far performed his duty as to have on each of those days the unpaid balance ready for payment to the treasurer; and his failure either to pay or to have it in keeping at the end of his official life is a breach of duty for which the sureties promised to answer. The day of his resignation is the first day upon which the finding makes it certain that his payments and his cash in hand are not together equal to his receipts. This imposed upon the defendants the burden of moving back by proof the time when he converted to his individual use and ceased to hold a portion of his receipts, to a point anterior to the date of approval of his first bond; and this they have failed to do.

In *United States* v. *Boyd et al.*, 15 Peters, 187, Boyd had been appointed receiver for four years from December 27th, 1836, and gave bond with sureties on June 15th, 1837; it was held that "it matters not at what time the moneys had been received by the officer, if received after his appointment. They were held in trust for the United States, and so continued to be held after the date of the bond; and the sureties are liable to the United States." In *Bruce et al.* v. *United States*, 17 Howard, 437, the court said: "When Bruce received his second commission, if any money or property which he

received in his former term of office still remained in his hands he was bound to apply and account for it under the appointment he then received.  *  *  Undoubtedly the sureties in the second term of office are not responsible for a default committed in his first. But if any part of the balance now claimed from him was misapplied during that period, it was incumbent upon the plaintiffs in error to prove it. No officer without proof will be presumed to have violated his duty, and if Bruce had done so, Steele had a right, under the opinion of the Circuit Court, to show it, and exonerate himself to that amount; but it could not be presumed merely because there appears by the accounts to have been a balance in his hands at the expiration of his first term."

In *Vivian* v. *Otis et al.*, 24 Wis., 518, Otis held office as clerk of the county board of supervisors for two terms—from January, 1865, to January, 1867, and from January, 1867, to January, 1869; the action was upon the bond for the last term for an alleged default in not paying over money to his successor in office. The court said: "For any moneys paid Otis prior to the execution of this bond, and in his hands at the commencement of the second term, the sureties therein became liable to the county."

If the collector retained money which it was his duty to have paid to the plaintiff before the date of approval of his first bond, under the provision of the charter requiring monthly payments, and after that date misapplied it, the defendants cannot escape liability for it. So far as they are concerned the retention was a violation of duty simply; merely a breach of a rule established by the city for its own convenience and protection. The actual misapplication constitutes the legal defalcation for which they are responsible.

Again, the sureties say that there were no legal assessment lists, rate bill or tax warrant in any of the years named; and that no certificate that Franey had taken the oath of office was lodged with the city clerk; and, therefore that they are not holden.

The existence of all these defects will not relieve them. Franey might well have refused to enforce the payment of a

tax until he received a legal warrant.    Individuals might well have refused to pay taxes not assessed in due form of law. But he was elected to and assumed the duties of the office of collector; as such officer he asked for the payment of taxes as assessed; as such, individuals voluntarily paid money to him in discharge of taxes; he thus became liable to the city for all money received in his official character, and it is within the defendants' undertaking that he should account for it.

Upon April 21st, 1877, taxes to the amount of $845.21, assessed but unpaid, stood against James and Edward Reed, jointly and individually; on that day Franey, being indebted to them jointly for goods to the amount of $822.21, delivered to them a receipted bill for these taxes, whereupon they made an entry upon their books as follows:—" John Franey, Cr., by five years taxes $845.21."    Franey made no entry concerning this transaction upon any private or public book.

The sureties are not to be held responsible for this amount. The municipality has the right to and of necessity must receive taxes assessed by it in money; the law knows no other medium of payment; the collector is authorized to receive that only.    The Reeds paid no money; they obtained and relied upon Franey's promise to pay it in their behalf.    That promise remains unredeemed, and the tax unpaid so far as the city is concerned.

On July 15th, 1875, Burdett Loomis, upon a demand of payment of a tax assessed against him, gave his memorandum check for it; the collector then noted upon the rate bill that this tax had been paid and entered the check in his cash book as cash received.    Neither at this nor at any subsequent time had Loomis sufficient funds in the bank upon which the check was drawn to meet it; demand of payment either of the check or tax was made upon him; but he has never paid either, and has been since adjudicated a bankrupt.    For the same reason as hereinbefore expressed, this tax remains unpaid, and the amount of it is not to be charged upon the sureties.

Franey was collector of taxes for the town of Hartford, and for several school districts therein, as well as for the city.

At the date of his resignation he had in hand and in bank a sum of money collected upon taxes laid by these corporations severally. Portions of this have been paid to them, by agreement of parties. Concerning the balance the committee report their inability to discover either when, from whom, or from what tax, it was received. This renders it impossible to divide it upon principle without great risk of wrong to the sureties. As they offer to permit a division of this balance upon the principle accepted by them in reference to the portion above specified, we advise the Superior Court to make such division thereof.

If, at the date of approval of the first bond, Franey had in his hands money which he had retained after the time when it became his duty to pay it to the city, the sureties are responsible for interest thereon from such date until payment; also for interest upon money retained which became payable after such date.

The sureties are to be relieved to the extent of Franey's unpaid salary, together with the sum paid by his estate.

We advise the Superior Court to render judgment for the plaintiff; the amount thereof to be determined by that court upon the principle herein set forth.

In this opinion the other judges concurred.