·CASE 14—EQUITY—OCTOBER 28, 1880.

# Helm, &c., v. The Commonwealth, &c.

### APPEAL FROM BRECKINRIDGE CIRCUIT COURT.

1. T. A. McGill was sheriff of Breckinridge county for 1871 and 1872, with different sureties on each of his bonds. A settlement of his accounts. for 1871 showed a balance due from him of $2,407.31, which was carried over into his settlement for the levy of 1872. Between the two settlements he paid exceeding that amount to the commissioner of the county court.

2. No application of this payment having been made by the sheriff, it is presumed that he made it in discharge of the balance due from him for the year 1871, and it must be so applied.

3. It is not shown that he paid any part of the balance due for 1871 out of taxes collected for 1872, and the presumption is that he did his duty in the absence of proof to the contrary.

4. The order of the county court, that the sheriff pay over the money to the commissioner, "to be applied to the purchase of county bonds," is no appropriation of the money.

5. The orders of the county court giving the sheriff further time to pay the balance due from him was without consideration, and revocable, and therefore did not release his sureties.

WILLIAMS & BROWN FOR APPELLANTS.

1. The effect of the orders of the county court giving further time to the sheriff to pay the balance due from him to the county was to release the sureties. (Sneed's ex'r v. White, 3 J. J. Mar., 525; Martin v. Taylor, 8 Bush, 384; Robinson v. Miller, 2 *Ib.*, 179; Offut v. Glass, 4 *Ib.*, 486; Kenningham v. Bedford, 1 B. Mon., 325.)

2. The order directing the commissioner to invest the money due in the purchase of county bonds, gave to the holders of these bonds an enforceable right to the money in McGill's hands. (11 B. Mon., 147.)

3. The settlement reported by the commissioner related exclusively to the taxes for 1872, and therefore the payments made should have been applied to the balance due thereon.

JOHN A. MURRAY FOR APPELLANT.

1. There is no law making it the duty of a sheriff to pay moneys in his hands, due to a county, to a receiver appointed by the county court. Miller had, as receiver, no right to demand the money from the sheriff. (Weaver v. Bracken County Court, MS. Opin., January, 1857; Owens v. Ballard County Court, 8 Bush, 611.)

2. The effect of the orders of the county court was to say to the sheriff: "You need not exercise any diligence in collecting," and was to release the appellants.

3. The bond for 1872 does not, and cannot embrace delinquencies of a former year. (Newman v. Metcalfe County Court, 4 Bush, 67; 24 Wisconsin, 518; 105 Mass., 295.)

W. LINDSAY FOR APPELLANT.

1. There was no ground for the presumption that the amount paid by the sheriff, after his settlement in regard to 1871, was made up of collections for the year 1871, and not for 1872. The case of Cummins v. Ballard County Court, MS. Opin., is in point.

2. The sheriff proves that he kept his collections for both years together, and they went into a common fund.

3. The county court, after the appointment of Miller as receiver, actively interfered with the discharge of his duties, by frequently ordering that the sheriff be allowed further time to pay the moneys collected by him. The effect was to suspend the right of action, and to release the sureties.

CHIEF JUSTICE COFER DELIVERED THE OPINION OF THE COURT.

T. A. McGill was sheriff of Breckinridge county for the years 1871 and 1872, and gave bond each year for the collection of the county levy. Some of the sureties on one bond were not on the other. Settlement of his accounts for 1871 showed a balance in his hands of $2,407.31. This balance was carried into his settlement for the levy of 1872. It appeared from that settlement that he had paid out, between the dates of the two settlements, a sum exceeding the balance found against him on the first settlement; but it did not appear out of what fund these payments had been made, nor whether the payments were intended to be on account of the balance due for 1871 or on account of the levy of 1872.

In this state of the accounts the county court appointed a commissioner to collect the balance due from McGill. The commissioner brought this suit in equity against the sureties on each bond, and on final hearing the court

Helm, &c., v. The Commonwealth, &c.

adjudged that the sureties on the bond of 1872 were liable for the whole balance due from him, and rendered judgment accordingly, from which they prosecute this appeal.

No application of the payment, made after the first settlement, having been made by the sheriff or the county court, the sureties on the bond of 1872 insist that they should be applied to the liability for collections made by the sheriff for that year. In this we cannot concur. The evidence does not show from what source the money arose with which the payments in contest were made. The sheriff was charged with the entire taxes for 1871. If he had collected them at the time the settlement was made, he then had the money in his hands represented by the balance found against him; if he had not collected all the taxes of 1871 he should be presumed to have collected them afterward, before he collected the taxes of 1872, and it ought to be presumed that he made payments on account of the balance of the fund of 1871. It was his duty to so keep his accounts as to show out of what fund he made payments. This, he says, he did not do, but he does not prove that he paid any part of the balance for 1871 out of the taxes of 1872, and we ought to presume he did his duty, and paid it out of the taxes of 1871.

But, if no such presumption arises, the law must make the application of payments not applied by the parties nor either of them.

In a very similar case (U. S. v. Kirkpatrick, 9 Wheaton, 737); Mr. Justice Story said in cases where there are long running accounts, and debits and credits are perpetually occurring, and no balances are otherwise adjusted than for the mere purpose of making rests, payments ought to be applied to extinguish the debts according to the priority of

time. (Hammers v. Rochester, 2 J. J. Mar., 144.) This court said, discussing this subject, that the order of time in which debts become due is a circumstance which should not be without its influence. (See also 5 Bush, 185.)

If injustice results to the appellants from the application of this rule, it is not on account of any fault of the county court. The balance due for 1871 is shown on the settlement of January, 1872, and whatever confusion and uncertainty exists, results wholly from the failure of their principal to indicate, when he made payments, to what liability they should be applied.

It appears that after the settlement of his accounts for 1872 was made, he was ordered by the county court to pay over the balance in his hands to a commissioner appointed for the purpose of receiving it, "to be applied to the payment of county bonds."

It is contended that this order was an appropriation of the money, and that thereafter it belonged to the holders of county bonds, and should have been sued for by them.

We do not think so. The order directs it to be paid to the commissioner, and he is directed to pay it to the holders of county bonds.

This gave the holders of bonds no right to sue the sheriff, and was not intended to do more than to indicate the use to which the money would be applied when collected; and the subsequent action of the sheriff and the county court shows that the order was so understood.

The court made orders from time to time giving the sheriff further time to pay, which amounted, in the aggregate, to several months. This the sureties rely upon as releasing them, the indulgence having been granted without their knowledge or consent. Their argument is, in sub-

stance, that the orders giving further time for payment suspended the county's right of action, and consequently deprived them of the right to pay the amount for which they were liable, and to proceed against their principal to compel him to reimburse them, or to proceed against him for indemnity.

If the orders had that effect, then they are clearly right. But did they have that effect? There was no consideration for the indulgence, and the orders granting it might have been set aside at any time, or might have been disregarded and suit ordered at any moment; and as the court might have disregarded them, the sureties had the same right. It is true the commissioner had no right to sue during the time covered by the orders without express directions to do so. But this was not because the right of action was suspended, but because the commissioner, being the officer of the court, was bound to obey its orders.

The law made it necessary, before suit could be brought, that a commissioner should be appointed to collect the money, and that when brought, the suit should be in his name.

The principle involved is the same as if a private person should assign a note for collection, and afterward enter into an agreement not to sue or allow suit to be brought until after the lapse of a specified time. In such a case it would not be contended that the surety was released if the agreement to forbear to sue was made without consideration. He would have a right at any moment to revoke the order given to the assignee not to sue, and to disregard the agreement with the debtor, and cause suit to be brought. In a word, such an agreement would be the ordinary case of an agreement without consideration to indulge the principal,

which no one pretends would discharge a surety.    That the county court can only speak by its records does not alter the case.    Its acts in respect to a debt due to the county are merely ministerial, and when it makes an agreement, a consideration is just as essential as between private persons, and we perceive no more reason for presuming a consideration in such a case than in any other.

Nor are we able to perceive that the order giving further time to pay without interest was an actual injury to the sureties.    The argument is, that by making that order, the court encouraged the sheriff to withhold payment by relieving him from the payment of interest, if he should do so. This may possibly be true, but the mere possibility or even probability of injury from that cause is too intangible to be made the basis of judicial action.

A careful examination of the record, and consideration of the argument of counsel, has failed to convince us that there is any error in the record, and the judgment must be affirmed.