## TOWN OF ENFIELD *vs.* CLARK L. HAMILTON ET AL.

First Judicial District, Hartford, October Term, 1930.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 7th—decided November 17th, 1930.

*Philip J. Sullivan, Jr.*, with whom was *Leo J. Dowling*, for the appellant (plaintiff).

*Ralph O. Wells* and *William S. Locke*, with whom, on the brief, was *Philip E. Barnard*, for the appellee (defendant The Fidelity & Casualty Company of New York).

BANKS, J. The trial court overruled the claim of the defendant surety company that the continuation certificates and renewal receipts constituted contracts continuing in force the original bond and that the limit of its liability was $10,000, the amount of that bond, and ruled that each such certificate and receipt constituted a separate obligation for the twelve-months period covered thereby. Since, however, the trial court in its judgment, based upon other considerations, limited the liability of the surety company to this amount, with interest, and the surety company in its answer consented that judgment be entered against it in that amount, its appeal from such ruling becomes material only in the event that the plaintiff's appeal is sustained. We will therefore consider first the questions raised upon the plaintiff's appeal.

The first of these arises upon the plaintiff's contention, overruled by the trial court, that the collector was required, as a matter of law, to collect every tax account in full, and that he, and consequently the surety upon his bond, was liable for all uncollected taxes upon the rate book, except those which were liened or abated. The only authority relied upon in plaintiff's brief in support of this contention is a statement in the case of *Bridgeport Hydraulic Co.* v. *Bridgeport,* 103 Conn. 249, 260, 130 Atl. 164, to the effect that it is the duty of every tax collector to collect the taxes in the rate bill, citing General Statutes, §§ 1291 and 1295, Rev. of 1918, now §§ 1232 and 1225, Rev. of 1930. This falls far short of supporting the claim that the collector is an insurer of the collection of the taxes upon the rate bill, and neither the sections of the General Statutes cited, nor any others relating to the duties of tax collectors, furnish any warrant for such contention. In *Hartford* v. *Franey,* 47 Conn. 76, a tax collector had given a taxpayer a receipted bill for his

taxes in consideration of a release of the latter's claim against him individually, and in another instance had accepted a check in payment of a tax and noted the tax as paid though the check proved to be uncollectible. In an action against the sureties upon the bond of the tax collector it was held that these taxes were unpaid so far as the city was concerned and that, being uncollected taxes, the sureties were not responsible for them. In other jurisdictions, in the absence of controlling statutory provisions, it is generally held that the collector is responsible only for the exercise of due diligence in the collection of taxes, and is not an insurer of the collection of all the taxes. *United States* v. *Thomas,* 82 U. S. (15 Wall.) 337; *Shanahan* v. *State,* 142 Md. 616, 121 Atl. 636; *Howell* v. *Lamberson,* 149 Ark. 183, 231 S. W. 872; *Brookfield* v. *Bigelow,* 80 Vt. 428, 68 Atl. 656; *Colerain* v. *Bell,* 50 Mass. (9 Metc.) 499; 3 Cooley on Taxation (4th Ed.) § 1372. Section 1212 of the General Statutes (Rev. 1918, § 1290) provides that upon the expiration of the term of office of any tax collector, the rate bills not fully collected shall be delivered to his successor, who shall have authority to collect the taxes due thereon. Upon the resignation of Hamilton a special collector was appointed to complete the collection of town taxes upon his rate book, who qualified and received payment of such taxes. The plaintiff cannot collect from the sureties upon Hamilton's bond taxes already paid to his successor. The statutory provision for the collection of these taxes by the successor of the original collector is inconsistent with the existence of an absolute liability upon his part for such taxes after the expiration of his term of office. 3 Cooley on Taxation (4th Ed.) § 1372. It would obviously be impossible for the collector to collect a tax upon personal property where the taxpayer and the property had left the State after

the date of the assessment and before the rate bill was delivered to the collector. Our statutes do not, either directly or by implication, make the tax collector an insurer of the collectibility of the taxes upon his rate bill. Even so, the plaintiff contends, the collector, and the sureties upon his bond, are liable if the failure to collect taxes upon the list is due to the negligence of the collector, and it is claimed that such was the case here. The court has found otherwise and the finding cannot successfully be attacked. The plaintiff introduced no evidence of negligence other than the fact and amount of uncollected taxes, claiming that the collector was an insurer and that it was not necessary to establish negligence. The taxes not collected, liened or abated prior to the last two years were insignificant in amount, the bulk of those uncollected falling within the last year, when the collections were uncompleted by reason of Hamilton's resignation. The court did not err in holding that the surety company was not liable for the taxes which Hamilton failed to collect during the years that it was surety upon his bond.

Hamilton's original bond was conditioned for the faithful performance of his duties as property tax collector of the town of Enfield, and that he should honestly account for all moneys that might come into his hands in his official capacity during his term of office beginning on March 1st, 1915, the term being for one year from that date. The plaintiff contends, and the court has found, that the continuation certificates and renewal receipts issued by the surety company each year thereafter constituted separate and distinct undertakings, and the complaint in separate counts alleges that Hamilton stole and embezzled certain specified amounts during the term of office covered by each such continuation certificate or renewal receipt. Upon its own theory of the case the plaintiff,

in order to recover upon any one of these undertakings, was bound to prove that it had suffered loss by reason of a breach of the bond during the official term of the tax collector covered by such undertaking, and the amount of such loss.

The court has found that from time to time Hamilton made payments on account of taxes collected by him, allocating each payment to a definite town list, that such allocations were accepted by the town treasurer and such payments allocated on his books in accordance with the allocations designated by Hamilton, and that the net amount actually paid and so allocated to each such list was slightly in excess of the net amount actually collected on such list, except the list of 1916 when, through a clerical error, the amount paid was $4.99 less than the amount collected, and except that the amount paid on the list of 1925 was $63,971.23 less than the amount collected. The court found that as a result of the payments so made and allocated Hamilton had paid in full taxes collected by him except those collected from March 1st to June 16th, 1926, on the list of 1925, with the result that his entire defalcation was thrown into the period covered by his bond for the year commencing March 1st, 1926, and that the liability of the surety company was limited to $10,000, the amount of that bond. The finding does not set forth the dates of the payments made by Hamilton to the town treasurer upon the several lists, but it is assumed by the parties, and seems to be conceded, that during each year of his collectorship Hamilton embezzled money paid to him as collector, that each year after the first he took from the taxes received by him that year an amount sufficient to make good his defalcation of the previous year and paid it over to the treasurer, allocating it to the payment of the taxes of that year, and that thus in turn

he made up the amount of his embezzlement in one year out of the taxes collected by him in the next succeeding year. Such being the situation the question arises whether the sureties upon the bond for each year except the last are liable for the defalcation of that year, which however has been made good, or whether the entire loss must fall on the sureties on the bond for the last year, the defalcation in which has not been made good. In this case the surety is the same on each bond, but, upon the plaintiff's theory of the case, each renewal certificate is a separate undertaking, and the surety upon it is liable only for a loss resulting from a breach of that particular contract of indemnity. It must be conceded that there was a breach of Hamilton's bond during each year of his successive terms of office. His act in taking the taxes of one year to pay arrearages of the preceding year was a breach of his official bond of the second year so that his course of conduct constituted a series of embezzlements covering the whole period that he held office. But the liability of the surety upon his bond for any one yearly term was to indemnify the town for any loss suffered by it by reason of his failure to account for all the money that came into his hands in his official capacity during that term. Any such loss constitutes damages which the town is entitled to collect from the surety company which is upon his bond written to cover that particular term. In separate counts in the complaint the plaintiff alleges as to each year during the period in question, the election of Hamilton as collector, the execution of the bond or continuation certificate, that during his term from March 1st to March 1st he embezzled a specific sum of money, and that "the plaintiff has not received from the defendants or either of them said monies as described." The court has found, and this finding is not open to successful attack, that,

as to each yearly term of office except the last, the town has received from Hamilton all of the taxes collected by him during that term, which of course includes all the money that he had embezzled from the taxes collected during that term. We fail to see why this is not a complete answer to any claim of liability of the surety company to the town under the bond given to indemnify it against loss for the failure of the collector to account for the taxes collected by him during that term. For example the third count of the complaint alleges that during Hamilton's term of office from March 1st, 1917, to March 1st, 1918, he failed to account to the plaintiff for $2313.28, and stole and embezzled from it $2203.98, and that the plaintiff has not received these sums from the defendants or either of them. The court has found that the amount collected by Hamilton during that period has been paid over to the town. How can there be any liability upon the surety on his official bond based upon a failure to account for money collected during that period when the money has actually been accounted for and paid over? The fact that the payment was made with money appropriated from the taxes received during the next term of the collector would not make the surety upon his bond for the year 1917-1918 liable for money collected during that year and fully accounted for. In *Pratt's Appeal,* 41 Conn. 191, a tax collector, being in default upon the taxes collected by him on the list of 1867, made up his deficiency on that list out of the taxes collected on the list of 1868. It was sought to hold the estate of the surety upon his bond for the year 1867 liable to the town for the defalcation of the tax collector upon the list of that year. The court held that the amount of the shortage on the list of 1867, having been received and credited by the town on the arrearages of taxes on that list, it could

not be said that the payment was such a misapplication of the fund that it should be withdrawn from its original application and applied to the taxes of 1868, and the estate of the surety upon the bond for the year 1867 was held not to be liable to the town because the collector had made full payment of all the money due upon the list of that year. In the opinion in that case it was said that the specific money received by the collector was his money, and that payments made by him from time to time must be treated as payments from his own funds. In *State* v. *Griswold*, 73 Conn. 95, 46 Atl. 829, which was a prosecution of a tax collector for embezzlement, it was held that such official holds the money received by him as taxes in the nature of a trust, and that the town is at all times the real owner of all the taxes. The court said that *Pratt's Appeal*, when examined as to the facts on which it was decided, was not in conflict with this rule, and that that case held that the money in the custody of the collector, although collected on the rate bill of 1868, was, as between him and the town, so far his own money that he might apply it to the payment of taxes for the year 1867, and that the town, having accepted and applied it in payment of the bond of 1867, could not deny that it was a good payment. In *Waterbury* v. *Lawlor*, 51 Conn. 171, in which it was held that money in the hands of a tax collector is not a debt within the meaning of the statute of set-off, the court reaffirmed the statement in *Pratt's Appeal* that tax money in the hands of the collector creates an obligation which has some of the elements of a debt due the community imposing the tax. It follows from these decisions that, though the misappropriation of the taxes received by the collector upon the list of any one year is embezzlement, for which the collector would be subject to criminal prosecution, and for the amount of which the

sureties upon his bond for that year would be liable to the town, if some portion of the money so taken is paid over to the town in settlement of the taxes of the previous year, the town, having accepted and applied it in payment of such taxes, cannot deny that it was a good payment. Indeed, in this identical transaction, all that the collector has done in making such allocation is to pay over to the town money which he has collected for it. The question of the legal effect of its allocation to the settlement of the rate bill of one year rather than another arises in connection with a determination of the liability to the town of the sureties upon the bond of the collector for the respective tax lists, and has frequently been considered by the courts in cases where, with different sureties upon the bonds of different years, it became necessary to determine which set of sureties was responsible for the arrearages in question. In 37 Cyc. 1221, the rule is stated as follows: "If a payment is . . . applied on the deficit of the first term, and is sufficient to discharge it, the liability of the sureties on the bond given for that term is extinguished," and "the sureties on the bond for the second term are liable for the resulting deficiency in the collector's accounts for that term." See also 26 R. C. L. p. 375, § 332. The cases cited upon both briefs, and numerous others, hold that, when a collector receives taxes for a particular year and directs their application to a discharge of his defaults for previous years, and the town receives the money in ignorance of its misappropriation, so that there is no fraudulent appropriation by it in derogation of the rights of sureties, the sureties upon the bond in force during the year in which such allocation and payment are made, rather than those upon the bond in force when the original shortage occurred, are responsible. *Frownfelter* v. *State,* 66 Md. 80, 5 Atl. 410; *County of Pine* v. *Willard,* 39

Minn. 125, 39 N. W. 71; *Commonwealth* v. *Knettle,* 182 Pa. St. 176, 38 Atl. 13; *Carpenter* v. *Corinth,* 62 Vt. 111, 22 Atl. 417; *McGuire* v. *Williams,* 123 N. C. 349, 31 S. E. 627; *Crawn* v. *Commonwealth,* 84 Va. 282, 4 S. E. 721; *Sooy* v. *State,* 41 N. J. L. 394; *Helm* v. *Commonwealth,* 79 Ky. 67; *Colerain* v. *Bell,* 50 Mass. (9 Metc.) 499; *Egremont* v. *Benjamin,* 125 Mass. 15, 18; *Hudson* v. *Miles,* 185 Mass. 582, 71 N. E. 63; *Gwynne* v. *Burnell,* 7 Cl. & Fin. 572; 46 Corpus Juris, 1073.

Here the defendant surety company was the surety upon each bond given by Hamilton, but the question of whether recovery can be had upon one or more of the bonds, and upon which, is the same as though there was a different surety upon each bond, since the bond of each year is applicable to and security for the taxes of that year only.

The statute (Rev. 1930, § 1221, Rev. 1918, § 1283) requires that every collector of town taxes shall, on or before the fifth day of every month, pay to the town treasurer all moneys collected by him previous to the first day of the month. Admittedly Hamilton failed to make payments to the treasurer promptly in compliance with the statute, and the plaintiff contends that by reason of such failure he was guilty of dishonest accounting, and that the statute in effect forbade the use of funds collected in a given year to discharge the shortages of a previous year. The neglect of Hamilton to pay over to the treasurer monthly all moneys in his hands was a violation of duty simply and did not constitute a defalcation (*Hartford* v. *Franey,* 47 Conn. 76) and the provisions of the statute do not have the effect claimed by the plaintiff.

The trial court found that the amount of Hamilton's defalcation during any one twelve-months period could not definitely be ascertained chiefly because of the de-

posit in a common bank account of town taxes, district and personal taxes and sprinkling assessments. The conclusion we have reached upon the other questions in the case renders unnecessary a consideration of the plaintiff's claim that this finding cannot be sustained. No correction of the finding can justifiably be made which would materially affect what we have deemed to be the controlling questions in the case. The two rulings on evidence to which exception was taken were clearly correct.

As already noted, the conclusion that there is no error upon the plaintiff's appeal renders unnecessary any discussion of the questions raised upon the defendant's appeal.

There is no error.

In this opinion MALTBIE and HINMAN, Js., concurred.

HAINES, J. (dissenting). A statement of the reasons for my inability to concur in the conclusion of the majority, is justified by the fundamental character of the question upon which we differ. This question has its source in the following statement of fact in the majority opinion: "There was a breach of Hamilton's bond during each year of his successive terms of office. His act in taking the taxes of one year to pay arrearages of the preceding year was a breach of his official bond of the second year so that his course of conduct constituted a series of embezzlements covering the whole period that he held office." The foregoing facts finally and conclusively establish the legal liability of the surety upon each of the bonds given during Hamilton's tenure of office covered by this case, including the first. The extent of the liability under each bond depends, in this action, upon the amount of money

which the town has lost by the breach of that particular bond. But the opinion further says: "It seems to be conceded, that during each year of his collectorship Hamilton embezzled money paid to him as collector, that each year after the first he took from the taxes received by him that year an amount sufficient to make good his defalcation for the previous year and paid it over to the treasurer, allocating it to the payments for the taxes of that year." Apparently following *Pratt's Appeal,* 41 Conn. 191, the opinion of the majority reaches the conclusion that the defalcation for each year except the last was "made good," so that the town suffered no loss in fact, until the last year, when the total of the embezzlements for the series of years was discovered. It therefore sustained the judgment of the trial court that the surety for each year except the last, was free from liability. In my judgment the law does not require a conclusion so clearly unjust to the plaintiff town. The town paid the surety the full premium each year for a bond of $10,000 to protect it against every breach of duty by the collector for that year. Each embezzlement caused the town a loss in that year, of that amount of money, and it has never been reimbursed for any of those annual losses. It is a fiction and not a fact to say that the total loss which the town suffered occurred in the last year. Nor does it seem that *Pratt's Appeal* can be used to justify the conclusion that the surety was released from its conceded obligation each year preceding the last. In that case the collector took a part of his collections for 1868 and used it to make good a shortage in his account for the collections of 1867. It was held that "when the collector received the rate bills and warrants annexed, he became obligated to pay over to the treasurer of the town, within the time prescribed in the warrants, all moneys due and owing to the town upon the rate bills

entrusted to him. The specific money received by him in the collection of taxes is his money and not that of the town; payments made by him from time to time must be treated as payments from his own funds." (p. 196.) This statement was obviously based upon the ancient theory that upon the delivery of the tax warrants to the collector, the entire amount of the tax became in effect a debt from him to the town, and all and any moneys which he collected, were his moneys for the purpose of discharging that debt. This view is not so difficult to understand if we take note of the fact that the law of that time only required of a collector that he pay the treasurer of the town within a time limited by the town officials, and if he failed to do so, he was required to surrender his rate bill and some other person was named by the selectmen to complete the collection. That law further provided that if he failed to pay "within a reasonable time after the same shall become due and payable" he could be removed from his office by a judge of the Superior Court. General Statutes, Rev. 1866, Title 64, Chap. 2, §§ 65-67. The status of Hamilton, under the law in force during his term, was very different. Apparently first enacted in substance by Chapter 31 of the Public Acts of 1878, that law required him to report and pay over to the treasurer each month the moneys collected the previous month, with a list of the taxpayers who had paid the moneys and the several amounts paid by them. This, if obeyed by the collector, not only furnished a means of checking his work each month, but it effectually prevented the application of the proceeds of one month's collections to the payment of any other month's collections. After this legislation was enacted the collector could not allocate these collections as he pleased, and it could not longer be said that the money was in effect his own money for that purpose. In

*State* v. *Griswold,* 73 Conn. 95, 46 Atl. 829, which was decided in 1900, essentially the same requirements were imposed upon the collector as were imposed on Hamilton. In that case we said: "A tax collector of a town has by virtue of his office the custody of the money he has received as taxes. He holds this money in the nature of a trust. *United States* v. *Boyd,* 15 Pet. [40 U. S.] 187. So far as the necessities of his duty require, he may treat the money as his own, and no further. The town is at all times the real owner of all the taxes." Then, referring to the statement in *Pratt's Appeal* that "the specific money received by him in the collection of taxes is his money and not that of the town," we said: "That case did not hold that money paid as taxes and in the hands of the tax collector is his own money for all purposes. The contrary is the law as shown in the later cases. *Hartford* v. *Franey,* 47 Conn. 76; *Waterbury* v. *Lawlor,* 51 Conn. 171." The *Pratt* case has been practically overruled, and certainly furnishes no authority at the present time for the proposition that a collector may use collections for one year as though the money was his own, by attempting to make good his embezzlement for the previous year. Hamilton was forbidden, by the express terms of the statute in force at the time, from making that use of the town's money. He was holding it for the town, in trust, as a public official, and one of the statutory requirements of his trust was that he use it in one way, and one way only, to hand to the treasurer, with a detailed report of its source. He violated this requirement each year of his incumbency and fraudulently and falsely handed in money belonging to the current year saying it was money collected the previous year. Thus the embezzlements for the different years were never "made good" in any honest sense of the word. If to cover his shortage he

had used money which did not belong to the town, the loss so far as the town was concerned would of course have been made good.  As it was, the loss which the town suffered the first and each succeeding year, remained a loss, the total annually growing greater until the discovery of the full amount during the last year.  To hold otherwise is to say that if A has two funds of $10,000 each and B is the trustee under bond for one of the funds and embezzles it and then steals the other fund from A he can use the money obtained from his theft to "make good" to A for the embezzlement and thus free his surety from liability.  This seems to me to be the answer to the question asked in the majority opinion: "How can there be any liability upon the surety on his official bond based upon a failure to account for money collected during that period, when the money has actually been accounted for and paid over?"  Moreover, to say that each year's shortage "has actually been accounted for and paid over," does not accord with the actual figures already in evidence, and the finding should have been corrected. Property taxes were covered by the bond, while other taxes which Hamilton collected were not.  In the table made up by the accountants and put in evidence, it appears that in the year 1919-1920, for example, the total collections of property taxes amounted to $113,982.80, and of other taxes and interest, $8,415.33, making a total of $122,398.13.  All that was turned in amounted to but $111,194.39.  This was a shortage of $11,203.74, so that if we assume that he paid in the full amount of the taxes and interest other than property taxes, there would still be a shortage in the property taxes of $2,788.41.  A similar situation is disclosed in 1922-1923.  The total collections of property taxes amounted to $227,717.20, and of other taxes and interest $8,136.39.  The total which was turned in was but

$226,107.26, leaving a shortage of $9,746.33. If we again assume that the other taxes and interest were all turned in, there still remained a shortage which must have been in the property taxes of $1,609.94. Here is concrete evidence, prima facie, that there was a shortage in property taxes in both of those years which has never been paid over to the town out of the collections of the succeeding or any other year.

The opinion says there can be no liability, and in support of that assertion cites *Pratt's Appeal* at length. The textbook authorities cited in apparent accord with that view are not, of course, based upon our statute law which is controlling in this State. If Hamilton had had another bondsman, say for $60,000, the last year, the conclusion which the opinion reaches would impose upon that bondsman the entire amount of the aggregate embezzlements for all the years, on the theory that the loss all occurred in the last year. This would be contrary to the law and contrary to the fact as well. In my opinion we should hold that the liability of the surety was fixed by the embezzlement in each year, and that the case should have been remanded to the Superior Court to determine the actual shortage for that year.

There is a broader aspect of the question. The bond given by Hamilton and signed by this surety contained this provision: "Now therefore, the condition of the foregoing obligation is such that if the principal shall faithfully perform such duties as may be imposed upon him by law and shall honestly account for all money that may come into his hands in his official capacity during said term, then this obligation shall be void; otherwise it shall remain in force." In each year the principal failed to perform the duties of payment and accounting required of him by the statute; each year he failed to honestly account for all money that

came into his hands in his official capacity, during that year. The bond was breached, whether or not there was actual embezzlement. "Where the law requires absolutely a ministerial act to be done by a public officer, and he neglects or refuses to do such act, he may be compelled to respond in damages to the extent of the injury arising from his conduct." *Amy* v. *Supervisors,* 78 U. S. (11 Wall.) 136, 138, 20 L. Ed. 101. This is an action on contract for damages which the town suffered by its breach. It is conceded that each yearly contract was breached. The total loss of near $60,000 is the result of the different breaches and each breach was the direct cause of part of the entire loss. It is obvious, and is of course conceded, that there was not an embezzlement of some $60,000 of the collections of the last year. A contract liability such as we concededly have here, for the dishonest and unfaithful act of a principal (an embezzlement), cannot, in my judgment, be avoided or cancelled by showing that the principal was guilty of another dishonest and unfaithful act (making a false and illegal accounting for that same year), by which the embezzlement was concealed. Otherwise, the very act the surety contracted to ensure the town against, would be held to have freed the surety from its obligation.

In this opinion WHEELER, C. J., concurred.