Strafford,
March 1, 1938.

STRAFFORD *v.* AMERICAN EMPLOYERS' INSURANCE COMPANY.

298

*Hughes & Burns* and *Charles F. Hartnett* (*Mr. Hartnett* orally), for the plaintiff.

*Conrad E. Snow* (by brief and orally), for the defendant.

MARBLE, J.   The bond on which the present action is brought amounts in all essential particulars to a contract of insurance. *Guaranty Trust Company* v. *Company*, 79 N. H. 480, 481.   The obligation assumed by the defendant is that Arthur R. Caverly, having been duly elected tax collector for the town of Strafford for the year 1932, "shall faithfully perform all the duties incumbent on him as

Tax Collector and shall serve all processes lawfully directed to him, and perform all other things whatever which a Tax Collector may or ought by law to do, and shall really and truly account to said Town for all money coming into his hands as said Tax Collector."

Although the question of law argued by the defendant appears to be sufficiently presented by the ruling of the referee, the case is here treated as though the finding requested by the defendant had been expressly made.

The payment by Caverly of the money collected under the 1932 tax warrant "to cover a previous delinquency under a former bond" was "a misapplication of money" (Pingrey, Suretyship & Guaranty, 2d *ed.*, *s.* 307) and "as much a breach of his bond, as if he had retained it in his own pocket" *(Frownfelter* v. *State,* 66 Md. 80, 87). This is not a case where a tax collector has properly paid to the treasurer money received in a given term and the treasurer, with the collector's consent, has later applied the money to a default occurring in a prior term. See Spencer, Suretyship, *s.* 270, *p.* 376. Here the tax collector, "by his own act, diverted the funds received to a purpose for which they were not received, in disregard of his official duty." *State* v. *Sooy,* 39 N. J. Law 539, 549. See also, *Enfield* v. *Hamilton,* 112 Conn. 314; *Hudson* v. *Miles,* 185 Mass. 582, 588, and cases cited.

The general rule governing situations of this kind has been stated as follows:

"Where an officer has been elected for two succeeding terms, with a different bond for each term, and he abstracts money received during the second term to pay a defalcation made under the first term, the sureties on the second bond are liable. In order to make good the defalcation of the first term, the principal might have borrowed money from an outside source, in which case it would have been equivalent to payment with his own funds, leaving an indebtedness on his part to outside parties, and the sureties on the first bond would not be liable. If, instead of borrowing from outside, the principal uses the funds received during the second term, the effect is the same as to the first set of sureties as if he had borrowed it elsewhere; but it is a conversion of the funds received during the second term, and the second set of sureties would be liable for it. It is the same as using the money received during the second term to pay his private debts. . . .

"A test which may be applied in cases where an officer succeeds himself, and has given a different bond for each term, is to determine

what would be the liability of the sureties if the officer, instead of succeeding himself, had been succeeded by another person. If the successor should take money received by the latter to make good a defalcation of his predecessor, there is no doubt of the liability of the second set of sureties." Childs, Suretyship, s. 116, pp. 201, 202.

"The weight of authority is that the second sureties are liable and the first exonerated, and that the use of public money received in the second term to square the accounts of the first term, cannot be distinguished from the use of the funds to meet any other obligation of the principal." Stearns, Suretyship (4th ed.), s. 156, pp. 260, 261, and cases cited.

The defendant relies upon the decision in *United States* v. *January*, 7 Cranch 572, and cases based thereon. Mr. Justice *Story* discusses this decision at some length in a note appended to his opinion in *United States* v. *Wardwell*, 5 Mason 82, 87. In the light of his analysis the case appears to go no farther than to decide that where payments have been indiscriminately made by a collector of revenue to the supervisor of revenue and carried by the latter to general account, the collector "has no right *subsequently* to direct" a special application of the payments to any other account. See, also, *State* v. *Sooy*, 39 N. J. Law 539, 547, in which it is said: "*United States* v. *January*, as explained by Judge Story . . . only decided that there was no right of appropriation after payments had been made upon general account."

The suggestion that the defendant cannot be held liable if the treasurer knew or ought to have known the source of the funds received from Caverly is untenable even if, despite the referee's findings and the dearth of the defendant's exceptions, that question could properly be raised. It is the general rule that sureties upon official bonds are not released by the negligence or misconduct of other officials. Stearns, Suretyship (4th ed.), s. 162 and cases cited. As already stated, the bond is in effect a contract of insurance and, unlike the bond in the case of *Guaranty Trust Company* v. *Company*, 79 N. H. 480, it is not conditioned upon supervision over the principal "for the prevention of default."

Nor is the defendant discharged from liability merely because Caverly failed to submit his tax book and lists to the treasurer for inspection and computation in compliance with the requirements of P. L., c. 47, s. 30. Statutory provisions of this kind are designed for the protection of the public, and constitute no part of the con-

tract with the surety. *United States* v. *Kirkpatrick*, 9 Wheat. 720, 736.

*Judgment for the plaintiff.*

All concurred.